Barbara Realty Company *et al. vs.* Zoning Board of
Review of the City of Cranston.

FEBRUARY 14, 1958.

Present: Condon, C. J., Roberts and Andrews, JJ.

CONDON, C. J. This is a petition for certiorari to review the action of the zoning board of review of the city of Cranston, hereinafter called the board, in granting the application of the Budlong Rose Company, hereinafter referred to as the applicant, for an exception or a variance to permit the erection of a motor lodge on that part of lot No. 666 on assessor's plat No. 10 zoned as a dwelling house district. We issued the writ prayed for and in compliance therewith the board has made due return of the record of its proceedings pertaining to such action.

The petitioners are owners of real estate in the general neighborhood in which the applicant's lot is situated. They and numerous other owners of realty in the vicinity appeared at the hearing on the application before the board and remonstrated against the granting thereof. They also challenged the right of one member of the board to hear the application on the ground that he had prejudged the matter in the applicant's favor. Before proceeding to hear the application on its merits the board allowed the remonstrants to present evidence in support of their charge of prejudice on the part of such member, and thereafter they decided in executive session, such member not participating therein, that he had not prejudged the case and was qualified to sit.

At the conclusion of the hearing on the merits the board took the case under advisement and thereafter filed a written decision granting the application. In their decision they have stated specifically the reasons or grounds thereof. They also enumerated therein in detail numerous restrictions with which the applicant was required to comply in availing itself of the use applied for and granted. The fol-

lowing are significant in view of the nature of the remonstrances made at the hearing and of the location of the homes of the remonstrants nearest to the applicant's lot: "1. There shall be no exit or entrance to the premises on either Dean Parkway or Meshanticut Valley Parkway. 2. The existing growth of trees and shrubs located on that portion of Lot 666 which lies immediately to the west of the premises made the subject of this exception shall be maintained."

It appears from the return that the applicant's lot borders on what has been called a high-class residential area which has been recently developed by the building of homes costing $35,000 to $50,000, or more in some instances. Some of the remonstrants in testifying before the board emphasized this fact and urged that it be considered as conclusive proof that the erection of a motel in such a neighborhood would not be in harmony therewith. They further expressed the opinion that the granting of the application would constitute an invasion of the residential zone by an undesirable business use which would be the entering wedge for additional invasions. This, they said, would eventually cause a deterioration of the neighborhood and ultimately result in the depreciation of costly homes which had been built in reliance upon the protection against such invasions given by the zoning ordinance.

However, the board considered certain other facts which presented the matter in a less favorable light to the remonstrants. Those facts are stated at length in their decision granting the application as follows:

"After considering all of the evidence and testimony presented at the hearing, and after viewing the premises and considering the presence of the Howard Johnson's restaurant on the adjoining lot, the business zone of 150 foot depth on the westerly side of New London Avenue and the much larger Garden City business area on the opposite side of New London Avenue; considering also the coal mine, a non-conforming use

diagonally across New London Avenue from the motor lodge site; considering further that the large parcel to the rear of the motor lodge site, namely Lot 302 on Assessors' Plat 16, is zoned for business and that plans are presently being made for its development as a business site; having in mind that the distance which separates even the nearest residence from the motor lodge and also the character of the property which separates the residences from the motor lodge buildings; considering the topography of the motor lodge site with the relatively high elevation at the rear of Lot 666; considering the limited potential of Lot 666 for residential development; and giving proper consideration to the true nature of the motor lodge (so-called) as planned and outlined and as known; the Board finds that the exception as granted:

1. will not substantially or permanently injure the appropriate use of neighboring property;

2. will be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in that district; and

3. is necessary to secure an appropriate development of the lot in question."

The petitioners allege in their petition seventeen separate grounds of error in the board's decision some of which are repetitious while others are neither briefed nor argued. In their brief they have discussed only three points as follows: I. The board was without jurisdiction and the provisions of the zoning ordinance which purported to authorize a special exception permitting the board to allow a business building in a district zoned for single-family residences are invalid and void. II. Assuming the board had jurisdiction and that the ordinance is valid, their decision granting the application was arbitrary and constituted an abuse of discretion. III. The hearing before the board was not fair and impartial.

There is no merit in the first point. The board rested its decision on subsections (1), (4), (8) and (9) of sec. 27 B

of chapter 31 of the zoning ordinance. These subsections were enacted pursuant to the provisions of the zoning law, general laws 1938, chap. 342, §8, and in our opinion are not repugnant thereto. Manifestly none of those subsections redelegates the power which the legislature delegated to the city council, but on the contrary they represent a vesting in the board, subject to definitely-expressed standards or limitations, of a discretion to grant in specific instances set out in the ordinance exceptions therefrom. In this respect it differs from the provision of the ordinance held invalid in *Flynn* v. *Zoning Board of Review,* 77 R. I. 118. In that case, at page 125, we held that the city council provided in the ordinance "no rules or regulations, specific or general, that fix any limitation upon the exercise of the board's discretion. On the contrary it passed on to the board the complete power which it had received from the legislature under the enabling act."

In the case at bar it cannot be said that the ordinance makes any such sweeping grant of power. When read as a whole, section 27 B authorizes the board to grant an exception only where it finds that the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured. We considered the same question in *Woodbury* v. *Zoning Board of Review,* 78 R. I. 319, where a provision of the ordinance similar to the instant one was under review and we distinguished it from the one in *Flynn* v. *Zoning Board of Review, supra.*

Since we are of the opinion that the ordinance here is valid, there can be no question of the board's right to exercise jurisdiction thereunder and to entertain the applicant's application for an exception. Such application invoked the board's discretion to grant the relief prayed for, and the next question under the petitioners' second point is whether on the record before them the board abused their discretion in granting said relief.

After carefully examining the transcript and the exhibits we cannot say that the board abused its discretion in granting the exception subject to the restrictions set out in their decision. The prime purpose of those restrictions was to safeguard certain parkways, where some of the principal remonstrants live, from any direct encroachment by business uses incident to the conduct of the motel. This is especially true of restrictions 1 and 2. They prohibit exit from or entrance to applicant's lot on Meshanticut Valley Parkway and require the continued maintenance of an existing screen of trees and shrubbery on the westerly boundary of said lot along such parkway. The effect of those restrictions is to deprive the applicant of any use of the frontage of his lot on that parkway as long as it continues to avail itself of the exception. Park land owned by the state on Dean Parkway bounds applicant's lot on the north so that no access to or from said lot is available on such parkway.

We note in the record another factor that seems to us to be entitled to weight in determining whether the board's decision was arbitrary. The location and topography of applicant's lot presented a rather unusual problem. The lot is situated on New London avenue and extends back generally west to Meshanticut Valley Parkway. On the north it is bounded by the above-mentioned state-owned park land on Dean Parkway and on the north and east by a triangular lot which is zoned for business and occupied by a Howard Johnson restaurant. This lot fronts on New London avenue and on Dean Parkway. Directly across from it on Dean Parkway are the residences of some of the remonstrants who built their homes after the restaurant was erected. Indeed it appears that the restaurant was there before the high-class residential district to the north and west of it was developed.

The applicant's lot is immediately adjacent to the restaurant lot from New London avenue back to Dean Parkway. Incidentally the frontage of applicant's lot on New

London avenue is zoned for business to a depth of 150 feet. Directly across from it on the easterly side of the avenue is a business center known as Garden City. Adjoining such center on the south and opposite the southerly end of applicant's lot is a coal or graphite mine with a large industrial building fronting on New London avenue. On Meshanticut Valley Parkway directly opposite a portion of applicant's lot and diagonally opposite the portion for which the exception is sought is a large tract designated on assessor's plat 16 as lot No. 302 which is zoned for business.

It appears from the above that applicant's lot is almost entirely surrounded by land zoned for business. Certainly if its frontage on New London avenue is devoted to such permitted use the rear portion, adjoining the Howard Johnson restaurant, for which the exception is desired will be of even more doubtful value for residential use than it is. now.

A real estate expert, J. Benjamin Nevin, testified that he personally examined the lot and noted that it was about four feet above the level of the sidewalk on New London avenue and that it sloped precipitously upward to a height of some 42 feet on Meshanticut Valley Parkway within a distance of 300 to 400 feet. Taking this topographical factor into consideration, together with the presence of the business center and the coal mine across New London avenue and the restaurant adjoining on the north, he was of the opinion that the tract was not suitable for residential development. He testified further that in his opinion the proposed development was appropriate to the neighborhood, with which he said he was familiar, and would not tend to devaluate surrounding residential property but rather it would sell for a better price. The applicant called another real estate expert, Charles A. Dunlap, and he corroborated Mr. Nevin.

From the foregoing it is plain that there are peculiar characteristics pertaining to the lot in question both as to

location and topography which justified the board in deciding that the applicant was entitled to the relief it sought. In order to satisfy themselves that the case called for the exercise of their discretion the board did not rely solely on the record before it but took a view of the neighborhood. As a result they were apparently convinced that the provisions of the ordinance on which they relied warranted an exception. After carefully reading the transcript we are of the opinion that such decision is not arbitrary and that they did not abuse their discretion.

This brings us to petitioners' third point, namely, that they were deprived of a fair and impartial hearing by reason of the alleged bias and prejudice of the member whom the board refused to disqualify. There is no need to recount the testimony on this point. We have carefully considered it and it seems to us to be devoid of any weight whatsoever tending to prove prejudice on the part of the member in question. It is totally unlike the evidence which we held in *Barbara Realty Co.* v. *Zoning Board of Review,* 85 R. I. 152, 128 A.2d 342, disqualified another member of the board. Indeed we gathered from some of the testimony in the instant case that certain persons in the neighborhood were inquiring of the member as to his attitude toward the application prior to the hearing and possibly seeking to provoke him into making prejudicial statements.

We strongly disapprove of conduct of that nature. When an application is pending before the board all persons interested therein should refrain from interrogating any member as to his disposition in the matter. As we said in the earlier case, the zoning board in considering applications for exceptions or variances is performing a quasi-judicial function. To perform that function properly and be free from the suspicion of prejudice or partiality, it is imperative that interested parties refrain from approaching any member of the board privately. The statute provides a hearing where,

they can make their opinions known and that is the only legitimate way for anyone to influence or persuade the board in making up their decision.

In the earlier case we did not consider the manner in which the disqualified member of the board became involved in the discussion of the application privately, because his prejudice was so flagrant that we could not do otherwise than declare him disqualified regardless of how he became involved in making disclosure of such prejudice. Here there is no proof that petitioners did not have a fair and impartial board or that they were not given a fair and impartial hearing.

There is only one further contention to be considered. The petitioners point out that there is no reference to a "Motor Lodge" anywhere in the ordinance and therefore the board could not validly authorize the erection of one. We do not think that such fact is of sufficient importance to deprive the board of authority to allow a particular business use in a residential district in accordance with the provisions of the ordinance. A motor lodge is akin to a hotel. In the absence of a specific definition to the contrary in the ordinance it is a use proper to a business use. Such use is particularized in an application for an exception or a variance to acquaint the board with the nature of the business the applicant desires to conduct so that they may more readily and intelligently determine whether an exception for such a use is warranted. It is manifestly impracticable to set out in the ordinance the innumerable varieties of business uses.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records and papers certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

*Benedetto A. Cerilli, Francis Castrovillari,* for petitioners.

*Frank W. Golemba,* City Solicitor, *James DiPrete, Jr.,* Assistant City Solicitor, for respondent.