ANDRÉS LÓPEZ SALAS, Petitioner, *v.* PUERTO RICO PLANNING BOARD, Respondent.

No. 34. Resubmitted May 20, 1958.—Decided July 30, 1958.

* See his dissenting opinion on p. 243.

*Rafael F. Barbosa* for petitioner. *A. Sandín del Manzano* and *José E. Nieves Trilla* for respondent.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

Pursuant to § 26 of the Planning Act (23 L.P.R.A. § 28), petitioner attacks a decision of the Planning Board denying permit to construct and operate a tourist hotel in a plot of land located in an R-1 district. We believe that (1) the administrative proceeding before the Board did not meet the requirements of the due process of law; and (2) the decision appealed from must be set aside and the case remanded for a new hearing pursuant to the provisions of the Planning Act (23 L.P.R.A. § § 1 *et seq.*) and the Zoning Regulation in force.

Andrés López Salas filed before the Planning Board a request of direct authorization for the construction and operation of a 20-room tourist hotel, 2 bathhouses and certain

tourist facilities, such as swimming pool, tennis courts and horseback riding. He attached some plans for the project to be developed on a plot of 15 cuerdas owned by him, located at kilometer 9, hectometer 8 of the road leading from Santurce to Carolina. The Planning Board held a public hearing for said request and the case was submitted. Subsequently the Chairman of the Board sent the following letter to the Office of Tourism: "Mr. Andrés López Salas has filed before this Board a request of Direct Authorization, to be authorized to construct a twenty (20) room tourist hotel on certain property owned by him which is located at kilometer 9, hectometer 8 of the road leading from Santurce to Carolina and wherein two accessory buildings stand which will be utilized as bathhouses for the people to undress and dress when using the sport facilities of the hotel, such as swmming pool, courts and horseback riding.

"Before deciding this case, the Board wishes to know the opinion of that Agency as to whether it recommends the project just as it has been presented to us and if it meets your minimum requirements for recommending projects of this nature.

"For such purposes we are sending separately copy of the plans submitted to us by the petitioner, which we wish to have returned once studied." The Office of Tourism answered in the following terms: "We are answering your letter of March 28 as to the request filed before that Board by Andrés López Salas for an authorization to construct a 20-room tourist hotel on certain property owned by him located at km. 9, hect. 8, of the road leading from Santurce to Carolina and wherein two accessory buildings stand which are to be used as bathhouses in conjunction with this project. We wish to inform you that at yesterday's meeting of the Executive Committee of Tourism, after having made a personal inspection of said property and the existing buildings and the use being given to them now, and all the surroundings of said

property, it was decided that the Office of Tourism does not recommend this project as a tourist hotel because the site is not proper for a hotel of this type since the environment is undesirable and is not recommended for tourists.

"We take the opportunity of returning enclosed the plans of the project you submitted to us."

Several months later, without the appellant having knowledge of the foregoing communications, the Planning Board decided the request of direct authorization by virtue of the following order:

"DENYING CONSTRUCTION PERMIT

"The petitioner appealed directly to this Board requesting authorization to construct and operate a 20-room tourist hotel on a lot owned by him located at km. 9, hm. 8 of the road leading from Santurce to Carolina, ward of Sabana, within the municipality of Carolina.

"On March 4, 1952 the petitioner appeared at the corresponding public hearing, represented by engineer Héctor A. Deliz, who among other things alleged: that the lot has 15 cuerdas; that the project provides tourists facilities such as tennis courts and other sports, also lounges; and that the project presupposes an investment of around $112,000. The case was finally submitted.

"After having studied the case, this Board arrives at the following conclusions:

"1. That the premise is located in an R-1 district.

"2. That the Office of Tourism does not recommend favorably this projected tourist hotel.

"3. That after making a personal inspection of the property, of the buildings erected therein, as well as the use being given to them, it has been determined that the premise is not auspitious for establishing a tourist hotel.

"4. That the surroundings of the premises do not meet the desirable and necessary conditions for establishing a tourist hotel therein.

"5. That the area for the proposed tourist hotel is being used in such a way as to render the place undesirable for a project for tourist attraction.

"6. That the authorization of a tourist hotel in an R-1 district is within the sound discretion of this Board.

"In view of the foregoing, this Board hereby DENIES the requested permit."

A reconsideration having been sought within the term fixed by law, the Board denied it in a decision stating the following:

"The petitioner, represented by engineer Héctor A. Deliz, has requested the reconsideration of the above-entitled case, in which this Board rendered a decision on August 20, 1952, denying permit to construct a 20-room tourist hotel on a lot owned by him, located at km. 9, hm. 8 of the road leading from Santurce to Carolina, ward of Sabana, within the municipality of Carolina.

"As principal grounds of his motion for reconsideration, the petitioner alleges that the project meets all the requirements of the Office of Tourism, and that said hotel would improve the adjoining Isla Verde area, since its design, construction and operation, would protect the health, safety and welfare of the neighboring families, and would increase the value of the properties established in the surroundings.

"After studying the questions raised by the petitioner, this Board finds that they do not justify that our decision of August 20, 1952 be modified.

"In view of the foregoing, this Board hereby DENIES the motion for reconsideration."

In the writ of review before us it is alleged that the Planning Board committed error in considering the recommendation of the Office of Tourism without giving the petitioner an opportunity to refute it; in basing its conclusions on an inspection without giving the petitioner previous notice and without explaining what facts it observed in that inspection; in not stating the findings of fact supporting its conclusions; in acting arbitrarily and thereby abusing the discretion granted by law and regulations; and lastly, in deciding the case after the expiration of the term granted by law to the Board for entering its decision.

Before considering the errors assigned, we believe it is necessary to decide the two preliminary questions: (1) Is paragraph 15 of Art. 18 of the Zoning Regulation valid, inasmuch as it required the express approval of the Board in each case for the construction of a tourist hotel in R-1 districts? and (2) does the Board have authority to take cognizance of the petitioner's request, that is, without having a previous decision from Permit Official?

I

 Section 9 of the Planning Act authorizes the Board to adopt regulations fixing by districts or zones the use and development of public and private lands and buildings. See § 9, Act No. 213 of 1942 (Sess. Laws, p. 1106); Act No. 434 of 1951 (Sess. Laws, p. 1226); 23 L.P.R.A. § 9. These zoning regulations are applicable not only to urban districts, but also to districts "to be urbanized." The urban plan and the regulations that serve as basis should conform to the provisions enumerated in § 9: "The Board shall adopt regulations establishing by districts or zones the use and development of public and private lands and buildings, for such purposes as: industry, trade, transportation, residence, public or semipublic and civic activities, and recreation, and for rehabilitation and improvement; and for buildings, including the height of, and area covered by buildings; the density of population; business and advertising signs, in connection with which, restrictions regarding such factors as size, form, location, situation with respect to the building, its illumination, and projection over street lines, and elimination thereof, may be adopted; proportion of the lot on which may be constructed; and the sizes of lots, courts, and other open spaces; establishing conditions, norms and requirements in cases of normal and special appeals; *Provided, however*, That the zoning regulations adopted as herein provided shall apply only to the urban districts or to the districts to be urbanized; Provided, further, That zoning maps may include urban

districts of more than one municipality." Furthermore, the discretion granted to the Board is limited by the general norms established in § 3 of the Planning Act. "The powers granted in this Act shall be exercised for the general purpose of guiding a coordinated, adjusted and economic development of Puerto Rico which, in accordance with present and future needs and human, physical and financial resources, will best promote the health, safety, morals, order, convenience, prosperity, defense, culture, economic soundness and general welfare of the present and future inhabitants, and such efficiency and economy in the process of development and in distribution of population, of the uses of land and of public improvements as will tend to create conditions favorable thereto." Section 3 of Act No. 213 of 1942 (Sess. Laws, p. 1106), 23 L.P.R.A. § 3.

It should be noted that to solve the problems of readjustment between private property rights and the urban plan by zones, and to prevent likewise the unusual difficulties that would arise from a plan attempting to foresee it all, power was given to the Planning Board to establish in its zoning regulations ".... *conditions, norms and requirements in cases of normal and special appeals.*" (Italics ours.) The concept "special appeals" refers to the granting of *variances.* And the term "normal appeals" includes the granting of permits that are technically called *exceptions.* In general, a *variance* is the permit to devote the property to a use prohibited by the restrictions imposed on a zone or district. It is only granted to prevent hardships to a property that, under special circumstances, would be equivalent to a confiscation if the provisions of the zoning regulations were strictly applied. On the other hand, an *exception* refers to the permit to use the property in a certain way admitted and tolerated beforehand by the zoning regulation, provided certain conditions are fulfilled. In short: a "variance" permits a use that is incompatible with the essential character of a zone or district in order to protect the constitutional rights of the owner in

special circumstances; on the contrary, an "exception" permits a use that is compatible with the essential character of a zone or district if certain requirements are met.[1]

Originally the Planning Act gave power to grant variances and exceptions to the Board of Building Appeals. By virtue of Reorganization Plan No. 11, that went into effect on July 1, 1950, the Board of Building Appeals was abolished and its functions were transferred to the Puerto Rico Planning Board. See 23 L.P.R.A., pp. 197–200. Section 26 of the Planning Act gives said Board power to review the decisions of the Permit Official and to enter ". . . . any order, requirement, decision, or determination as, in its opinion, ought to be made (1) in consideration of damages caused by special circumstances, (2) for arbitrary refusal to issue the necessary permits, or (3) for any other reasons authorized by the regulations of the Puerto Rico Planning Board adopted under this Act; and to that end the Board shall have the same powers of the official or body from whose ruling the appeal is taken." See § 26 of Act No. 213 of 1942 (Sess. Laws, p. 1106); Act No. 434 of 1951 (Sess. Laws, p. 1226); 23 L.P.R.A. § 28. As may be noted, clause (1) refers to the *variances* and clause (3) includes the *exceptions*. In *Deliz v. Board of Appeals*, 71 P.R.R. 128, 131 (1950) we decided that, pursuant to § 3 of Act No. 429 of 1946 (Sess. Laws,

---

[1] Hereinafter we indicate which are the specific norms prevailing in Puerto Rico for the granting of "variances" and "exceptions" to the zoning regulation. As to the distinction between both concepts see, among others, *Barbara Realty Co.* v. *Zoning Board of Review*, 138 A.2d 818 (R. I. 1958); *Moriarty* v. *Pozner*, 121 A.2d 527 (N. J. 1956); *Service Realty Corp.* v. *Planning and Zoning Board of Appeals*, 109 A.2d 256 (Conn. 1954); *Montgomery County* v. *Merlands Club*, 96 A.2d 261 (Md. 1953); Yokley, *The Place of the Planning Commission and the Board of Zoning Appeals in Community Life*, 8 Vand. L. Rev. 794, 802 (1955); Reps, *Discretionary Powers of the Board of Zoning Appeals*, 20 Law & Contemp. Prob. 280, 282–93 (1955); Gaylord, *Zoning: Variances, Exceptions and Conditional Use Permits in California*, 5 UCLA L. Rev. 179 (1958); 1 Yokley, *Zoning Law and Practice*, 2d ed. 1953, § 133; 1 Metzenbaum, *The Law of Zoning*, 2d ed. 1955, ch. IX-f-2-(b); 1 Rathkopf, *The Law of Zoning and Planning* 647–784; Annotation in 58 A.L.R. 2d 1083–1126.

p. 1218; 23 L.P.R.A. § 32) ". . . . the duties of the Permit Official are merely ministerial. They are designed to see that every applicant complies with the laws and regulations concerning building. So, if the application does not conform strictly with the statute, his sole function is to refuse the permit. On the other hand, the Act gives the Board ample discretion to make variances within the provisions of the Zoning Regulations whenever, in specific cases, the Regulations may not be fairly and reasonably applied." *Cf.* Ludlow, *Zoning in Puerto Rico* (Report No. 3) 1946, pp. 68–70.

Within the purview of the provisions of the aforementioned Planning Act and in conformity with the patterns, terms, standards and guides set forth by the latter, the Board proceeded to adopt the Zoning Regulation creating several types of residential, commercial and industrial districts, an M District (for rehabilitation and conversion) and another P District (for public use). In District R-1 (one family houses) hotels were not originally permitted. See Art. 18, Zoning Regulation, 1946. In 1950 the aforementioned article was amended to permit in R-1 districts the use of buildings or premises for "tourist hotels" by means of the addition of subdivision (15). It stated thus: "Article 18.—*Use Provisions in District R-1.*—In R-1 Districts, a building or premises together with its accessory buildings and uses may be used only for the following purposes: ... (15) Tourist hotels, by approval of the Board of Appeals, services customarily incident to the operation thereof, provided that no sign is displayed except a business sign at the entrance of the hotel, parallel to the street line and placed flat against the wall, not exceeding one (1) square meter in area; which may have artificial lighting, not intermittent, and provided further, that there shall be no display or other form of sign or advertisement on the exterior; *Provided* that the width of the front, side and rear yards shall be not less than fifteen (15) meters; however, under special circumstances the Board of Appeals may reduce the yard requirements particularly where

the lot adjoins a park or other open space for public use, dedicated and shown in the subdivision plans, or a public beach or other water area.

"A space for accessory uses as part of a main building or accessory buildings may be located on a part of a lot where a main building is located, but not in a required yard. Notwithstanding this provision, accessory buildings, and space for accessory uses which are permitted in R-1 Districts, may be located on required side or rear yards provided that they comply with the provisions of Article 21.

"In addition, any required yard may be dedicated to accessory uses such as courts, swimming pools, walks, parking area or similar accessory uses, provided that covered structure, benches, kiosks or any other types of structure having a height one (1) meter or more above the level of the ground are not built; except towers or posts required for courts, swimming pools or lighting and ornamentation of walks.

"These hotels shall provide garage or parking space sufficient to accommodate one (1) vehicle for every three (3) guest rooms. Such space shall be in the main building, in an accessory building or in a parking area on the lot occupied by the main building; *Provided*, that the required yards shall not be used to accommodate more than two (2) vehicles for each guest room." See New Zoning Regulation, revised in 1950, appearing on pp. 71–73 of the Planning Rules and Regulations for Puerto Rico (1952).[2] Furthermore, article 1 of said Regulation defined the term "tourist hotel" as follows: "A hotel the design of which expresses clearly that same was intended to operate mainly in the interest of tourism, and which shall include, as part of the project, within its premises, and in proportion to its maximum lodging

[2] On June 22, 1955 the Planning Board approved and adopted a *New Planning Regulation No. 4* (Zoning Regulation), which was duly approved and promulgated on July 13 of the same year by the Governor of Puerto Rico. It became effective 30 days after its approval and was sent to the Legislative Assembly in its Fourth Ordinary Session of the year 1956. It appears published as the *New Zoning Regulation* (1956).

facilities, one or more of the following tourist attractions: (1) Pools and adequate rest terraces. (2) Beach or lake development, swimming pools, or both, with bathing facilities or any other aquatic sport, adequate enough to serve its guests. (3) Adequate facilities to be used for horse back riding; and for excursions; and courts or facilities for other open air sports.

"These Tourists Hotels may also include dormitories or suites with additional cooking facilities."

Thus, in 1950 the Board included among the uses permitted in R-1 Districts, the tourist hotels, *upon approval of the Board of Building Appeals on Constructions* (which today is the Planning Board). Naturally, for R-1 Districts there are many uses allowed without requiring the Board's approval or specific authorization: one family houses, boarding or rooming houses with accommodations for not more than 7 persons, educational or religious buildings, gardens, orchards, etc. Nevertheless, among the uses permitted in R-1 Districts there are others that require the Board's authorization or specific approval: cemeteries, philanthropic, recreative, reformatory or mental institutions, sanatoriums, hospitals, airports, public bus stations, radio stations, race-tracks, parks and play-fields for business purposes, etc.. As we have seen, the "tourist hotels" also fall within this last category, where the use is permitted only upon the specific approval of the Board.

■■ Now, when the Zoning Regulation permits the requested use, but demands the Board's specific authorization, are there any norms or guides to decide whether said use permit, which is technically an "exception" or "conditional permit," should be denied or granted? We believe so. In those cases the Board is bound to apply to the concrete facts of each case the norms and guides established in Art. 10 of the revised Zoning Regulation. The afore-mentioned article provides that the permits for specific exceptions, that is to say, the cases where the Regulation gives discretion to the Planning Board, will be handled as "ordinary appeals" and

shall be decided by the Board upon application of the following norms: "The Planning Board shall act in these cases provided that the design, construction, and operation shall adequately protect the health, safety and welfare of the occupants of the building to be constructed and of the neighboring property, and that the adequate light and air provided to the occupants of the building to be constructed and to the neighboring properties is not reduced in any way that the danger of fire is not increased and that the established value of property in neighboring areas shall not be reduced or impaired; *Provided,* that all such actions of the Planning Board shall be in harmony with the general purposes of this Regulation and with the Planning Act and that adequate protection of the public interest shall be assured."[3] On the other hand, § 26 of the Planning Act grants to any party directly interested in the issuance or refusal of a building or building use permit, the right to petition the review by the Supreme Court of any action or decision by the Board. The scope of this review is limited to "questions of law." This leaves the Board a broad margin of discretion for accomplishing the aims

---

[3] The New Zoning Regulation (1956) maintains alive those norms in its Art. 10.00. When a "variance" is requested, are the provisions established by Art. 9 of the Zoning Regulation for the cases of *special appeals* applicable? ". . . the Planning Board can authorize variance to the requirements of this Regulation, when due to the special extraordinary circumstances strict application thereof would actually prohibit or unreasonably restrict the use of premises, and where it is satisfactorily shown that the granting of such variance would alleviate a clearly demonstrable hardship approaching confiscation as distinguished from a special privilege [or] convenience, *provided* that the variances granted under these provisions do not constitute an obvious and direct amendment to any district boundary or to any zoning provision contained in this Regulation; and provided further that at least one of the following special circumstances exist: 1. The peculiar shape, exceptionally narrow or scarce depth of a lot. 2. A lot area, less than the minimum required for a one family houses in the district in which the lot is located; *Provided that* when a lot is exceptionally small in relation to the building, additional lot area may be required. 3. Exceptional topographic conditions. 4. Other special extraordinary circumstances.

"The Planning Board may consider also those special appeals about the issuance or denial of a permit for the construction or use of a premise when

pursued by the Act and the Zoning Regulations. However, judicial power retains authority to correct any abuse of administrative discretion and even the findings of the Board are not valid, as a question of law, if there is no substantial evidence in the record to support them. *Cf.* Gellhorn & Byse, *Administrative Law* 426–577 (1954) ; Davis, *Administrative Law* 812–65; 868–928 (1951) ; Jaffe, *Judicial Review: Question of Law*, 69 Harv. L. Rev. 239 (1955) ; *Judicial Review: Question of Fact*, 69 Harv. L. Rev. 1020 (1956) and *Judicial Review: Constitutional and Jurisdictional Fact*, 70 Harv. L. Rev. 953 (1957). *Cf. Concepción* v. *Board of Accountancy, ante*, p. 190 (1958).

▇▇▇ Undoubtedly, the Legislature can not delegate arbitrary or unlimited powers to administrative agencies. The statute must prescribe a definite standard which may serve as a guidance and limit the use of delegated power, whether of rule-making or adjudication. The statute need not prescribe fixed and definite standards. Given the trend of modern social and economic conditions, (1) the Legislature can not consider the details of the government programs: its prime function is to establish general patterns, for an attempt to take part in the details would be only half successful;

it is wholly or partly within the lines of roads or streets included in an Official Map, or in a P District, and may grant variations to the requirements of this Regulation under reasonable conditions, when such grants will alleviate a clearly demonstrable hardship approaching confiscation, as distinguished from a special privilege or special convenience, and provided it is demonstrated at the same time that the premises in question will not produce reasonable returns to the owner, unless the requested permit is granted, and that the benefit that the public will receive by denying such a permit will not be as great as the damage which will be suffered by the owner if it is not granted". The fundamental requirements for the granting of a variance have been established most accurately by the jurisprudence. *Otto* v. *Steinhilber*, 24 N.E.2d 851 (N. Y. 1939) ; *Levy* v. *Board of Standards and Appeals*, 196 N.E. 284 (N. Y. 1935) ; *Moriarty* v. *Pozner*, 121 A.2d 527 (N. J. 1956). See also, Reps, *Discretionary Powers of the Board of Zoning Appeals*, 20 Law & Contemp. Prob. 280, 282–89 (1955) ; 1 Yokley, *Zoning Law and Practice* 324–52 (2d ed. 1953) ; 2 Metzenbaum, *The Law of Zoning* 690–98, 766–812 (2d ed. 1955) ; I Rathkopf, *The Law of Zoning and Planning* 647–718 (3d ed. 1956) ; Annotation in 58 A.L.R.2d 1083, and cases therein cited.

(2) frequently it is necessary to plan certain programs which require the constant supervision, the technical knowledge and specialized experience of administrative agencies; and (3) no such program can be carried out unless a broad margin of discretion is granted to those agencies. For that reason, the delegation of powers can be constitutionally made on the basis of broad and general standards. See *Hilton Hotels* v. *Minimum Wage Board*, 74 P.R.R. 628, 648–49 (1953); *Giuseppi* v. *Walling*, 144 F.2d 608 (C.A. 2, 1944); *Fahey* v. *Mallonee*, 332 U.S. 245 (1947); *Lichter* v. *United States*, 334 U.S. 742 (1948); Gellhorn & Byse, *op. cit. supra* at 62–159; Davis, *op. cit. supra* at 41–88; Jaffe, *Delegation of Legislative Power*, 47 Col. L. Rev. 359, 561 (1947); Vanderbilt, *The Doctrine of the Separation of Powers and its Present-Day Significance* (1953). *Cf.* Mannheim, *Freedom, Power and Planning* (1950); Finer, *The Theory and Practice of Modern Government* 94–115 (rev. ed. 1949); Friedrich, *Constitutional Government and Democracy* 173–188 (rev. ed. 1950); Robson, *Justice and Administrative Law* (3rd ed. 1951). We believe that the rules fixed by the Planning Act in delegating to the Board the power to dispense "variances" and "exceptions" to the Zoning Regulations are adequate and sufficient. The validity of similar delegations has been recognized in practically all of the states. See *Beirn* v. *Morris*, 103 A.2d 361 (N. J. 1954); *Schmidt* v. *Board of Adjustment*, 88 A.2d 607 (N. J. 1952); *Ward* v. *Scott*, 93 A.2d 385 (N. J. 1952); *Barbara Realty Co.* v. *Zoning Board of Review*, 138 A.2d 818 (R. I. 1958); *States* v. *Guffey*, 306 S.W.2d 552 (Mo. 1957); *Katzin* v. *McShain*, 89 A.2d 519 (Pa. 1952); *Building Com'r of Medford* v. *C. & H. Co.*, 65 N.E.2d 537 (Mass. 1946); *Aloe* v. *Dassler*, 106 N.Y.S.2d 24 (1951), affirmed in 105 N.E.2d 104 (1952); *Jennings* v. *Conn. Lt.&P. Co.*, 103 A.2d 535 (Conn. 1954); *Sellors* v. *Town of Concord*, 107 N.E.2d 784 (Mass. 1952); *Montgomery County* v. *Merlands Club*, 96 A.2d 261 (Md. 1953); *Oursler* v. *Board of Zoning Appeals*, 104 A.2d 568 (Md. 1954); Reps., *Discre-*

*tionary Powers of the Board of Zoning Appeals,* 20 Law and Contemp. Prob. 280 (1955) ; Annotation in 58 A.L.R.2d 1083 and the cases cited therein.

There is no doubt that zoning today, as an integral part of urban planning, is essential for solving human, social and economic problems derived principally from: (1) the density of population in urban areas; (2) the traffic and circulation in the interior of the city; (3) the industrial centralization and installation of new factories in the urban center; (4) the need to provide adequate dwellings, parks, spaces for recreation and rest, light and air for the physical and mental health of the inhabitants; (5) the necessity to insure the group harmony and aesthetic values of the community; and (6) the obligation to preserve the historic values in old zones. Or stated in a negative manner: to prevent serious evil, material and human maladjustments and deficiencies produced by the disorganization in urban areas, it is necessary to establish an effective zoning and planning program. See G. Alomar Esteve, *Teoría de la Ciudad—Ideas Fundamentales para un Urbanismo Humanista* (1947) ; Id., *Comunidad Planeada* (1955) ; 15 *Encyclopedia of the Social Sciences* 538–39; Picó, *Diez Años de Planificación en Puerto Rico* (1952). *Cf. Berman* v. *Parker,* 348 U.S. 26 (1954) ; *Village of Euclid* v. *Ambler Realty Co.,* 272 U.S. 365 (1926). Sections 3, 9, and 26 of the Planning Act trace quite accurately the general policy to be followed by the Board in exercising its rule-making power in zoning matter. The power to establish rules for "variances" and "exceptions" is governed by the same norms therein established to dictate zoning regulations. These are undoubtedly sufficient and adequate.

Obviously, the "exceptions" or conditional use permits constitute the only effective method to control the use of buildings and premises which are unusual or special in certain zones or districts. In effect, although the construction and operation of hospitals, cemeteries, tourist hotels, etc. is not an everyday event in a residential zone, in certain cases

it could have a prejudicial impact on the district. It all depends on the specific circumstances as to time, place and mode of use. It thus becomes very difficult to formulate precise rules beforehand applicable to all the cases. To reach the necessary flexibility, the zoning laws and regulations generally permit said uses, but require the owner to obtain previously a special permit. The delegation of power to establish rules which shall govern the granting of those special permits or "exceptions," can be done validly in conformity with such standards as follows: (1) that due consideration be given to the general purposes and intention of the zoning rules; (2) that public health, safety and welfare be adequately protected; (3) that consideration be given to factors such as the protection of the value of the neighboring property, traffic, density of population, an adequate provision of light and air, the protection against fires, etc.; (4) that the variation be in harmony with the essential characteristics of the district and due protection to public interest. See *Romig* v. *Weld*, 87 N.Y.S.2d 580 (1949); *Aloe* v. *Dassler*, 106 N.Y.S.2d 24 (1951), affirmed in 105 N.E.2d 104 (N.Y. 1952); *Sellors* v. *Town of Concord*, 107 N.E.2d 784 (Mass. 1952); *Ward* v. *Scott*, 93 A.2d 385 (N. J. 1952); *Oursler* v. *Board of Zoning Appeals*, 104 A.2d 568 (Md. 1954); *Burnham* v. *Board of Appeals*, 128 N.E.2d 772 (Mass. 1955); *State* v. *Guffey*, 306 S.W.2d 552 (Mo. 1957); *Barbara Realty Co.* v. *Zoning Board of Review*, 138 A.2d 818 (R. I. 1958); *Katzin* v. *McShain*, 89 A.2d 519 (Pa. 1952); Annotation in 58 A.L.R.2d 1083, 1108–26; Reps, *op. cit. supra* at 289–93. These are the norms which are inferred after considering as a whole the provisions contained in § § 3, 9, and 26 of the Planning Act. Furthermore, the Board complied with the legislative mandate when it established in Art. 10 of the Zoning Regulation the standards determining the specific factors to be considered in deciding whether an "exception" or special use permit should be granted or denied. On the other hand, § 26 of the Planning Act provides, as we previously indicated, that the actions

or decisions of the Board in these cases can be reviewed judicially. Thus, the Board can not refuse a permit arbitrarily or capriciously. It must apply the norms outlined by the Planning Act and Art. 10 of the Zoning Regulation. And its conclusion should be based on concrete facts established at a hearing conforming to the requirements of the due process of law. Jaffe, *Administrative Law* 10–85, 112–222, 490–620 (1953). In that way the property rights of individuals are not jeopardized. The purpose of urban planning is precisely, as Alomar points out, to "restrict certain liberties of a few to increase the liberties of the majority . . . not forgetting that the point on which liberty is restricted by the plan are the points where this liberty would become restricted by the absence of the plan . . . [that would permit] . . . the irregular and capricious exploitation of ground." Alomar, *Comunidad Planeada* 214 (1955).[4] Therefore, we are convinced that Art. 18, subdivision 15, of the Revised Zoning Regulation is valid.

▇▇▇▇ Article 10 of the Revised Zoning Regulation provides that cases in which the Regulation requires the intervention of the Board, that is to say, the application for "exceptions," "*can be filed directly and at first instance before the Planning Board.*" The New Zoning Regulation (1956)

---

[4] How to reconcile planning with the individual liberties and the values of a democratic society constitutes without doubt one of the most important problems of our time. It concerns planning in its widest sense: integral social and economic planning. See Mannheim, *Diagnosis of Our Time* (1944), and *Freedom, Power and Planning* (1950); Dahl and Lindblom, *Politics, Economics and Welfare* (1953); Keilhan, *Principles of Private and Public Planning* (1951); Popper, *The Open Society and its Enemies* (rev. ed. 1950); Wootton, *Freedom Under Planning* (1945); Galbraith, *American Capitalism—The Concept of Countervailing Power* (1952); Parsons and Smelser, *Economy and Society* (1957). Nevertheless, the planning which concerns us here is much more limited: it refers only to what has been called "human ecology," that is, the spatial distribution and functional organization of the community. See Alomar, *op. cit. supra* at 23–164; Dickinson, *The West European City: A Study in Urban Geography;* Glass, *The Social Background of a Plan: A Study of Middlesbrough;* Orlans, *Stevenage: A Sociological Study of a New Town;* and Burgess, *The Urban Community.*

contains an identical provision. For that reason the request of direct authorization in this case was presented before the Planning Board and not before the Permit Official. Did the Board have authority to take cognizance of said request from the first instance? We believe it did.

Although § 26 of the Planning Act uses the term "appeals" in giving the Board power to grant variances and exceptions, it would be absurd to require the previous decision of the Permit Official on a request for "exception." In effect, as we decided in *Deliz* v. *Board of Appeals*, 71 P.R.R. 128, 131 (1950), ". . . the duties of the Permit Official are merely ministerial. They are designed to see that every applicant complies with the laws and regulations concerning building. So, if the application does not conform strictly with the statute, his sole function is to refuse the permit. On the other hand, the Act gives the Board ample discretion to make variances within the provisions of the Zoning Regulations whenever, in specific cases, the Regulations may not be fairly and reasonably applied . . . ." On the other hand, § 26 of the Planning Act expressly provides that, when an "exception" is requested, the Board shall have the same power of the Permit Official and may enter any order or decision as in its opinion ought to be made. 23 L.P.R.A. § 28.

Construing provisions similar to the ones contained in § 26 of our Planning Act, many states have decided that the administrative agency to which the power to grant exceptions or special permits is delegated has jurisdiction to take cognizance of an application for an exception or special permit. See *Roosevelt Field, Inc.* v. *Town of North Hempstead*, 98 N.Y.S.2d 350, 351 (1950); *Matter of Hickox* v. *Griffin*, 79 N.Y.S.2d 193 (1948). *Cf. Levy* v. *Board of Standards and Appeals*, 196 N.E. 284 (N. Y. 1935); *In re Pine Hill, Inc.*, 15 S.E.2d 1 (N. C. 1941). The ruling also admits that those agencies have original jurisdiction to take cognizance of applications for "exceptions," although ordinarily they only exercise review functions. See 1 Yokley, *op. cit. supra* at

315–16; 2 Metzenbaum, *op. cit, supra* at 913–17; 1 Rath-kopf, *op. cit. supra* at 773–76; Bassett, *Zoning* 117–69 (1940). Consequently, we decide that the provision of Art. 10 of the Zoning Regulation is valid and that the Board had original jurisdiction to take cognizance of the appellant's request for the construction and operation of a tourist hotel in an R-1 District. Although the authorities on this point are conflicting, we believe that the rule herein established is the most logical and rational, taking into account the very limited functions that the law grants to the Permit Official and the nature of an application for an "exception."

## III

▮▮ Lastly, we turn to analyze the procedural questions raised by petitioner in his assignment of errors. The Planning Board exercises quasi-judicial powers in considering and deciding an application for exception (direct authorization) for the construction and operation of a tourist hotel in an R-1 district or zone. Its function consists in settling a particular controversy by applying the standards prescribed by Arts. 10 and 18(15) of the Zoning Regulation to the specific facts of the case. Consequently, it must hold an administrative hearing of a quasi-judicial nature, pursuant to the requirements of the due process of law. The Board must make its findings of fact on the evidence introduced at this hearing. Furthermore, it must set forth the reasons or grounds on which its decision is based. See *Godreau & Co.* v. *Public Service Comm'n*, 71 P.R.R. 608, 613–15 (1950). *Cf. Eastern Sugar Associates* v. *Sugar Board*, 77 P.R.R. 354, 364–71 (1954).

The Board could not deny the application for exception (direct authorization) in the case at bar simply by saying that the use of petitioner's property for a tourist hotel is undesirable. Neither could it limit itself to making general conclusions as the following: (1) "that the surroundings of

the premise do not meet the desirable and necessary conditions for establishing a tourist hotel therein" and (2) "that the area for the . . . tourist hotel is being used in such a way as to render the place undesirable for a project for tourist attraction." In its decision the Board should set forth a statement of facts, referring to the basic findings of fact, after settling any conflict in the evidence, as well as to the inferences of fact which in its opinion were ultimately supported by the evidence. On the other hand, the Board should set forth the reasons or legal grounds on which it based its decision. Otherwise, it is obvious that no judicial review would be possible. As we said in *Godreau, supra:* " . . . a record of the testimony plus a bare decision is not enough. Only if [the administrative agency] . . . makes findings of basic or intermediate and ultimate facts, are the courts in a position to determine if the order . . . 'is reasonable and in conformity with law.' The findings must be sufficiently definite and certain to enable the courts to review the decision intelligently and to ascertain if the facts as found by [the administrative agency] afford a reasonable basis for the order." (At 613–14.) See also *United States* v. *Chicago M., St. P. and P.R.R.*, 294 U.S. 499 (1935); *S.E.C.* v. *Chenery Corp.*, 332 U.S. 194 (1947); *United States* v. *Pierce Auto Lines*, 327 U.S. 515 (1946); Benjamin, *Administrative Adjudication* 251–61 (1942); Davis, *Administrative Law* 521–537, 539–44, 545–62 (1951); Jaffe, *Administrative Law* 445–66 (1953); Gellhorn & Byse, *op. cit. supra* at 1149–82.

Precisely in cases where an administrative agency grants or denies exceptions or variances to the Zoning Regulations, the majority of the courts have required that the administrative decision be supported by findings of fact and conclusions of law. In *Petrarca* v. *Zoning Board of Review*, 80 A.2d 156, 157 (R. I. 1951), it was decided that: "Petitioner's complaint that the board failed to give any reason for its decision is justified. Here, as in other instances that have come to our attention, the board did not perform its duty in accordance

with our repeated direction to . . . set forth, even though it be in a summary manner, the ground or grounds for its action. The parties and this court are entitled to know the reasons for the board's decision in order to avoid speculation, doubt and unnecessary delay. (Citations.) Unless a zoning board complies with the above-mentioned direction it runs the risk of reversal if this court is unable to find from the record that there were good and sufficient grounds for the decision in question." In *Prusik* v. *Board of Appeal of Boston*, 160 N.E. 312, 314–15 (Mass. 1928), it was clearly shown that to protect the public and private rights involved, the decisions on exceptions and variances must be based on adequate conclusions, especially when the statute grants the right to judicial review. Thus, the Board can not limit itself to "recite" or repeat general phrases appearing in the Zoning Regulation as sole ground for decision. *Church* v. *Walsh*, 155 N.E. 575 (N. Y. 1927). See also, *Bradley* v. *Board of Boston*, 150 N.E. 892 (Mass 1926) ; *Matter of Collins* v. *Behan*, 33 N.E.2d 86 (N. Y. 1941) ; 1 Yokley, *op. cit. supra* at 356–58; Metzenbaum, *op. cit. supra* at 977–86.

▄▄▄ Of course, the Planning Board could not take notice of any recommendation made by the Office of Tourism after the public hearing, for the appellant had the right at said hearing to confront the recommendation, to cross-examine the authors of the report, to introduce evidence to the contrary to explain or refute it and argue against it. In *Escudero* v. *Minimum Wage Board*, 66 P.R.R. 561, 567 (1946), after the close of the public hearing, and before issuing its decree therein, the Chairman of the Board ordered an investigation and received certain reports regarding the production costs of several employers. The employers were given no opportunity whatsoever to refute or explain those reports. For that reason we set aside the decree stating the following: " . . . the Board should act on the basis of the evidence received at the public hearing. . . . Nor can

it be said that a public hearing has been held when the Board or one of its members requests and obtains secret evidence which destroys or modifies the effect of the evidence introduced publicly, without giving the interested parties an opportunity to become acquainted with, explain, or contest that secret evidence." (At p. 569.) In the *Escudero* case the secret evidence was of such nature that it could not have failed to affect the Board's notions. In the case at bar the Planning Board itself states in its decision, as one of the reasons for denying the use permit, that: *"The Office of Tourism does not recommend favorably this projected tourist hotel."* It is obvious that this irregularity is enough to reverse the decision appealed from. We point out that, in *Corporación Azucarera* v. *Sugar Board*, 77 P.R.R. 375, 387–88 (1954), we also condemned a similar action of an administrative body: ". . . . The Board states in its opinion that, under the authority of the power with which it is clothed, it ordered its chemist-inspector to examine the files and records of the Central in order to ascertain the manner in which the colono's canes were liquidated during several crop seasons, it caused that report to be incorporated in its order and took the same into account when passing upon the case under its consideration. The Board acted in that fashion without giving petitioner an opportunity to intervene with respect to that evidence . . . . The action of the Board in this respect was . . . erroneous." The right to a public hearing would be meaningless if the Board were permitted to base its decision on evidence received without the knowledge of the parties and outside the hearing, without giving the interested parties an opportunity to contest or explain it by cross-examination or introduction of any other evidence to the contrary. See *Alemañy* v. *Industrial Comm'n*, 63 P.R.R. 578, 579–80 (1944); *Mayagüez Sugar Co., Inc.* v. *Court of Tax Appeals*, 60 P.R.R. 737, 749 (1942); *English* v. *Long Beach*, 217 P.2d 22 (Cal. 1950); *Ohio Bell Telephone Co.* v. *Public Utilities Commis-*

*sion of Ohio*, 301 U.S. 292 (1937) ; *United States* v. *Abilene and Southern Ry Co.*, 265 U.S. 274 (1924) ; *Interstate Commerce Commission* v. *Louisville and Nashville R. R. Co.*, 227 U.S 88 (1913) ; Benjamin, *Administrative Adjudication* 83–96, 194–221 (1942) ; Gellhorn & Byse, *op. cit. supra* at 918–39; Jaffe, *Administrative Law* 395–97 (1953) ; Annotation in 18 A.L.R.2d 552 (1951), and cases cited therein.

It will be noted that subsequently to the decision in the case at bar, on May 15, 1957 the Planning Board adopted the *Rules of Civil Procedure Governing the Administrative Hearings Before the Puerto Rico Planning Board.* Those rules apply to all cases in which the Board acts pursuant to § 26 of Act No. 213 of 1942 (23 L.P.R.A. § 28). Therefore, they are applicable to cases where exceptions or variances have been requested. Rule 16 provides the following:

"After the evidence on all sides has been introduced, the counsel or agent of the petitioner or movant shall present his arguments before the Board. In the course thereof he shall explain with clarity all the points of fact and law on which he intends to rely for the investigation, order or decree, as the case may be. Then the counsel or agent of the contestant or appellant, if any, shall introduce his case.

*"Nothing but the evidence introduced may be considered as such nor form part of the record of the hearing, nor be considered in the decision entered by the Examiner. The Examiner shall admit in evidence everything that is offered as such. He will not act on the basis of presumptions or of his own personal knowledge or of any other official of the Board; or on any other evidence not appearing in the record of the hearing.*

"When part of an act, testimony, conversation or document is offered in evidence by one of the parties, the whole of the same subject shall be investigated by the other party.

*"The Examiner or 'Master' shall not admit or consider evidence without having first notified the parties and given them an opportunity to refute the evidence introduced.*

"Every application, motion, document, map, photograph, plan, letter or any other document appearing in the action of the case

in an administrative court and which although available as evidence, was not presented and admitted as such, *shall not be considered or serve as a basis of its determination.*" (Italics ours.)

In the decision appealed from the Board stated: ". . . *after making a personal inspection of the property (of the petitioner), of the buildings therein erected, as well as the use given to such buildings, it has been determined that the premise is not favorable for establishing a tourist hotel.*" There is no proof in the record sent up by the Board that it was the Board itself that made any inspection. The documents that we have examined rather show that it was the Office of Tourism which made the inspection. In any case, the Board did not give previous notice to the petitioner of its intention to make an inspection of the property and of surrounding areas. Neither did it set forth in the record the result of said inspection. Therefore, (1) no opportunity was given to the petitioner to refute that evidence during the hearing and (2) no complete record of the proceedings was formed to enable an adequate judicial review. We believe that the procedure followed by the Board was erroneous.

An administrative agency has the right to investigate on its own facts that it might consider pertinent to the decision of a case. It does not have to depend exclusively on the oral and documentary proof that the interested parties wish to present at the hearing. And one of the means of obtaining such information is the inspection. Nevertheless, it is indispensable: (1) to notify the interested parties so that they may attend at the inspection, if they so wish it; and (2) to set forth in the record of the public hearing all the facts proved by such inspection. See Gellhorn & Byse, *op. cit. supra* at 927–32, and cases cited therein; 18 A.L.R.2d 552, 571–73.

Upon reviewing the orders and actions of the Planning Board, in the cases included in § 26 of the Act (23

L.P.R.A. §.28), the judicial function is limited to "questions of law." Nevertheless, it constitutes a "question of law" to determine if the findings of fact that serve as a basis for the administrative order are supported by substantial evidence. In *Acosta* v. *Planning Board*, 71 P.R.R. 540, 543 (1950), and in *Fuertes* v. *Planning Board*, 76 P.R.R. 603, 606, we decided that if the weighing of the evidence by the Board is arbitrary, that would constitute an error of law. Of course, the findings of fact of the Planning Board can not be modified if there is a rational basis for their support in the evidence. As we said in *Seashore Realty & Invest. Co.* v. *Planning Board*, 75 P.R.R. 134, 143 (1953) : ". . . we cannot disturb a decision of the Board unless it has, as a question of law, acted arbitrarily, abusing its discretion or gone beyond the powers granted by law." The rule of "substantial evidence" serves precisely to preclude that the court substitute, by way of judicial review ". . . their notions for those which have guided the agency whose action—generally on a specialized subject— is intended to be reviewed." *Ledesma, Administrator* v. *District Court*, 73 P.R.R. 379, 383 (1952) ; see also *Concepción* v. *Board of Accountancy*, ante, p. 190 (1958) ; *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361, 364–66 (1952) ; Jaffe, *Judicial Review: Question of Law*, 69 Harv. L. Rev. 239 (1955) ; *Judicial Review: Question of Fact*, 69 Harv. L. Rev. 1020 (1956) ; Davis, *op. cit. supra* at 868–928. In order to limit judicial review to questions of law (including the one of determining if the findings of fact are supported by substantial evidence), it is indispensable that the Planning Board make a complete record of the proceedings had before it at quasi-judicial hearings. This record should contain all the documentary and oral evidence admitted. All the facts established in the inspection must be included.[5]

---

[5] The Planning Board may take official notice of certain facts. Jurisprudence has defined what may be included in the official administrative notice. See Gellhorn & Byse, *op. cit. supra at* 940–1009; Davis, *op cit. supra* at 476–520. The best practice is to inform the interested parties,

The foregoing is sufficient to set aside the decision and to remand the case to the Planning Board. Nevertheless, we believe it convenient to indicate, before finishing this opinion, that the Planning Board did not decide this case after the expiration of the term granted by § 26 for entering its decision in cases on exceptions. Pursuant to this section the Board had a term of thirty (30) days following the hearing for entering decision. Nevertheless, this term, according to law, could be ". . . interrumpted for proper or just cause." Nothing in the record shows that there did not exist a proper or just cause for interrupting such term in this case.[6]

The decision appealed from will be set aside and the case remanded to the Planning Board for subsequent proceedings compatible with this opinion.

Mr. Justice Santana Becerra did not participate herein.

Mr. Justice Belaval concurs in the result.

---

provided it is possible during the course of the hearing, about the contents of any matter of which the Board proposes to take official notice and give the parties a reasonable opportunity to submit information as to whether official notice of said matter was properly taken as to its contents. See 18 A.L.R.2d 552, 573–78; Jaffe, *Administrative Law* 380–404 (1953). To that respect, see rules 23 and 24 prescribed by the Planning Board in 1957 for the procedure of administrative hearings. Rule 23 provides: "The examiner or the Board shall take judicial notice of a fact if it is notoriously certain, and not subject to be controverted. It shall also take notice of any matter of public notice and of every scientific fact generally accepted. It shall also take notice of any such fact, statute or act as of which a court of justice would usually take notice. It shall take notice of its own decisions, but will not accept as true without evidence backing it, facts proved in other proceedings." Rule 24 provides: "When the Examiner or the Board deems it necessary or convenient it shall order on its own initiative or on petition of a party in the proceedings, an inspection and it may act on the basis of the experience or knowledge derived from such inspection, provided that said knowledge or experience derived from an inspection forms an integral part of the record."

[6] See Act No. 434 of May 14, 1951 (Sess. Laws, p. 1226). Act No. 34 of May 11, 1955 (Sess. Laws, p. 112) extended the term of sixty (60) days, keeping the provision of the previous law: ". . . *unless said term is interrupted for proper or just cause.*"