ANDRÉS LÓPEZ SALAS, recurrente, *v.* JUNTA DE PLANIFICACIÓN DE PUERTO RICO, recurrida.

Número 34.

*Reasignado:* 20 de mayo de 1958. *Resuelto:* 30 de julio de 1958.

\* Véase el voto disidente a la pág. 250.

648

*Rafael F. Barbosa,* abogado del recurrente; *A. Sandín del Manzano y José E. Nieves Trilla,* abogados de la recurrida.

El Juez Asociado Señor Saldaña emitió la opinión del Tribunal.

El recurrente impugna, al amparo de la sec. 26 de la Ley de Planificación (23 L.P.R.A. sec. 28), una resolución de la Junta de Planificación denegándole permiso para construir y operar un hotel de turismo en un predio de terreno ubicado en un distrito R-1. Creemos que (1) el trámite administrativo ante la Junta no se ajustó a los requisitos del debido proceso de ley; y (2) debe anularse la resolución recurrida y devolverse el caso para que se celebre una nueva vista a tenor de lo dispuesto en la Ley de Planificación (23 L.P.R.A. sec. 1 y sigtes.) y en el Reglamento de Zonificación vigente.

Andrés López Salas presentó ante la Junta de Planificación una solicitud de autorización directa para la construcción y operación de un hotel de turismo de 20 habitaciones, 2 cabañas y ciertas facilidades turísticas, tales como piscina, canchas de tenis y equitación. Acompañó unos planos sobre ese proyecto que iba a desarrollarse en una parcela de 15 cuerdas de su propiedad sita en el kilómetro 9 hectómetro 8 de la carretera que conduce de Santurce a Carolina. La Junta de Planificación celebró la correspondiente vista pública sobre dicha solicitud y el caso quedó sometido. Posteriormente el Presidente de la Junta dirigió a la Oficina de Turismo la siguiente carta: "Ante esta Junta el Sr. Andrés López Salas, ha radicado una solicitud de Autorización Directa, para que se le autorice a construir un Hotel de Turismo de veinte (20) habitaciones en una finca de su propiedad que radica en el Km. 9 Hm. 8 de la Carretera que va de Santurce a Carolina y en la cual existen dos edificios accesorios que serán utilizados como cabañas para cambiarse de ropas las personas que utilicen las facilidades deportivas del hotel, tales como piscina, canchas y facilidades de equitación.

"Antes de resolver este caso, esta Junta desea conocer la opinión de esa Agencia, en cuanto a si recomienda el proyecto tal y como ha sido presentado ante nosotros y si el mismo cumple con los requisitos mínimos que ustedes exigen para poder recomendar proyectos de esta naturaleza.

"Para tal propósito, estamos enviando, separadamente, copia de los planos sometidos por el peticionario ante nosotros, los cuales deseamos nos sean devueltos una vez sean estudiados los mismos." La Oficina de Turismo contestó en los siguientes términos: "Contestando su carta de marzo 28, relacionada con la solicitud radicada ante esa Junta por el Sr. Andrés López Salas para que se le autorice a construir un hotel de turismo de 20 habitaciones en una finca de su propiedad que radica en el km. 9 hect. 8 de la carretera que va de Santurce a Carolina, y en la cual existen dos edificios accesorios que se intentan utilizar como cabañas conjuntamente con este proyecto, deseamos informarle que en la reunión del día de ayer del Comité Ejecutivo de Turismo, después de haberse hecho una inspección ocular de la finca aludida y de los edificios existentes, y el uso que se le está dando en la actualidad, y de todos los alrededores de dicha finca, se decidió que la Oficina de Turismo no recomiende este proyecto como hotel de turismo debido a que el sitio no es propio para un hotel de esta índole ya que en sus alrededores existe un ambiente indeseable para recomendar que allí se hospeden turistas.

"Aprovechamos la oportunidad para devolverles adjunto los planos de dicho proyecto que ustedes nos sometieron."

Varios meses después, sin que tuviera el recurrente conocimiento de las anteriores comunicaciones, la Junta de Planificación decidió la solicitud de autorización directa mediante la siguiente resolución:

"DENEGANDO PERMISO DE CONSTRUCCIÓN

"El peticionario recurrió directamente ante esta Junta solicitando autorización para construir y operar un hotel de turismo de 20 habitaciones, en un solar de su propiedad, sito en el Km. 9, Hm. 8, de la carretera que conduce de Santurce a Carolina, Bo. Sabana, jurisdicción de Carolina.

"El día 4 de marzo de 1952 se celebró la correspondiente vista pública a la cual compareció el peticionario, representado por el Ing. Héctor A. Deliz, quien entre otras cosas alegó: que el solar tiene 15 cuerdas; que el proyecto provee facilidades turísticas tales como canchas de tenis y otros deportes, así como terrazas de descanso; y que el proyecto supone una inversión de alrededor de $112,000.00. El caso quedó finalmente sometido.

"Luego de haber estudiado el caso, esta Junta llega a las siguientes conclusiones:

"1. Que la pertenencia radica en un distrito R-1.

"2. Que la Oficina de Turismo, no recomienda favorablemente este proyectado Hotel de Turismo.

"3. Que luego de realizada una inspección ocular de la finca, de los edificios que enclavan en la misma, así como del uso que a dichos edificios se les viene dando, se ha determinado que la pertenencia no es propicia para el establecimiento de un hotel de turismo.

"4. Que los alrededores de la pertenencia no reunen las condiciones deseables y necesarias para el establecimiento de un hotel de turismo en la misma.

"5. Que el área en que se proyecta establecer el referido Hotel de Turismo está siendo usada en forma tal que hace indeseable el llevar a cabo un proyecto para la atracción de turistas.

"6. Que la autorización de un hotel de turismo en un Distrito R-1, está dentro de la sana discreción de esta Junta.

"Por las razones antes expuestas, por la presente esta Junta DENIEGA el permiso solicitado."

Solicitada la reconsideración dentro del término fijado por ley, la Junta declaró sin lugar la misma en una resolución que dice así:

"El peticionario, por conducto del Ingeniero Héctor A. Deliz, ha solicitado la reconsideración del caso de epígrafe, en el cual esta Junta, con fecha 20 de agosto de 1952 emitió una resolución denegando un permiso para construir un hotel de turismo de 20 habitaciones, en un solar de su propiedad, sito en el Km. 9, Hm. 8, de la Carretera que conduce de Santurce a Carolina, Barrio Sabana, jurisdicción de Carolina.

"Como fundamentos principales de su petición de reconsideración, el peticionario alega que el proyecto llena los requisitos

de la Oficina de Turismo, y que dicho hotel mejoraría el área de Isla Verde inmediata al mismo, ya que por medio del diseño, la construcción y la operación, este edificio protegería la salud, seguridad y bienestar de las familias vecinas, y aumentaría el valor de las propiedades establecidas en los alrededores.

"Luego de estudiadas las cuestiones planteadas por el peticionario, esta Junta entiende que las mismas no justifican que se modifique nuestra resolución de 20 de agosto de 1952.

"Por las razones antes expuestas, esta Junta por la presente DECLARA SIN LUGAR la petición de reconsideración".

En el recurso de revisión ante nos se alega que la Junta de Planificación cometió error al considerar la recomendación de la Oficina de Turismo sin dar oportunidad al recurrente para refutar la misma; al basar sus conclusiones en una inspección ocular sin dar aviso previo al recurrente y sin explicar qué hechos pudo observar en dicha inspección; al no expresar las determinaciones de hecho que sirvieron de base para sus conclusiones; al actuar en forma caprichosa y abusar así de la discreción que le conceden la ley y los reglamentos; y por último, al resolver el caso después de expirar el término que la ley concede a la Junta para dictar su resolución.

Antes de considerar los errores apuntados, creemos necesario resolver dos cuestiones previas: (1) ¿es válido el párrafo 15 del art. 18 del Reglamento de Zonificación en tanto en cuanto requiere la aprobación expresa de la Junta en cada caso para la construcción de un hotel de turismo en los distritos R-1? y (2) ¿tiene autoridad la Junta para conocer en primera instancia de la solicitud del recurrente, es decir, sin que haya recaído una decisión del Oficial de Permisos sobre la misma?

I

El art. 9 de la Ley de Planificación autoriza a la Junta a adoptar reglamentos fijando el uso y desarrollo por zonas o distritos de los terrenos y edificios públicos y privados. Véase la Ley núm. 213 de 1942, pág. 1107, art. 9; Ley núm. 434 de 1951, pág. 1227; 23 L.P.R.A. sec. 9. Estos regla-

mentos de zonificación son aplicables no tan sólo a las áreas urbanas, sino también a las áreas destinadas a la edificación en el futuro ("áreas para urbanizarse"). El plan urbanístico y los reglamentos que le sirven de base deben ajustarse a los preceptos que se consignan en el citado art. 9: "La Junta adoptará reglamentos estableciendo por distritos o zonas el uso y desarrollo de los terrenos y edificios públicos y privados, para tales fines como: industria, comercio, transporte, residencia, actividades cívicas y públicas o semipúblicas, de recreo, y de rehabilitación y mejora; y para edificios, incluyendo la altura y extensión de los edificios; densidad de la población; rótulos comerciales y de anuncios, en relación con los cuales podrán adoptarse restricciones sobre factores tales como el tamaño, forma, ubicación, localización en relación con el edificio, su iluminación, la proyección hacia la calle y la eliminación de los mismos; proporción del solar en que podrá construirse; y los tamaños de los solares, patios y demás espacios abiertos: estableciendo condiciones, normas y requisitos para casos de apelaciones normales y especiales; Disponiéndose, sin embargo, que los reglamentos de zonificación adoptados según se dispone por la presente, serán aplicables solamente a las áreas urbanas o para urbanizarse; Disponiéndose además, que los mapas de zonificación podrán incluir áreas de carácter urbano de más de un municipio." Además, la discreción concedida a la Junta está limitada por las normas generales que se establecen en el art. 3 de la Ley de Planificación: "Los poderes concedidos en esta Ley se ejercerán con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico, el cual, de acuerdo con las actuales y futuras necesidades y los recursos humanos, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, la moral, el orden, la conveniencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia y economía en el proceso de desarrollo, en la distribución de población, en el uso de las

tierras y en las mejoras públicas que tiendan a crear condiciones favorables a tales fines." Ley núm. 213 de 1942, pág. 1107, art. 3; 23 L.P.R.A. sec. 3.

Nótese que, para resolver los problemas de reajuste entre los derechos de propiedad privada y el plan urbanístico por zonas, y para evitar asimismo las extraordinarias dificultades que surgirían de un plan que pretendiera preverlo todo, se concedió poder a la Junta de Planificación para establecer en sus reglamentos de zonificación ". . . *condiciones, normas y requisitos para casos de apelaciones normales y especiales.*" (Bastardillas nuestras.) El concepto de "apelaciones especiales" se refiere a la concesión de *variaciones.* Y el término "apelaciones normales" incluye la concesión de permisos que técnicamente se llaman *excepciones.* En general, una *variación* es el permiso para dedicar la propiedad a un uso prohibido por las restricciones impuestas a una zona o distrito. Sólo se concede para evitar daños a una propiedad que, debido a circunstancias extraordinarias, equivaldrían a una confiscación si se aplicasen estrictamente las disposiciones de los reglamentos de zonificación. Por otro lado, una *excepción* se refiere al permiso para usar la propiedad en cierto modo que de antemano el propio reglamento de zonificación admite y tolera, siempre que se cumplan con ciertas condiciones. En suma: una "variación" permite un uso que es incompatible con el carácter esencial de una zona o distrito a fin de proteger en circunstancias extraordinarias los derechos constitucionales del propietario; por el contrario, una "excepción" permite un uso que es compatible con el carácter esencial de una zona o distrito si se da cumplimiento a determinados requisitos. [1]

---

[1] Más adelante indicamos cuáles son las normas específicas que rigen en Puerto Rico para la concesión de "variaciones" y "excepciones" a los reglamentos de zonificación. Sobre la distinción entre ambos conceptos véanse, entre otros, *Barbara Realty Co.* v. *Zoning Board of Review,* 138 A.2d 818 (R. I. 1958); *Moriarty* v. *Pozner,* 121 A.2d 527 (N. J. 1956); *Service Realty Corp.* v. *Planning and Zoning Board of Appeals,* 109 A.2d 256 (Conn. 1954); *Montgomery County* v. *Merlands Club,* 96 A.2d 261 (Md. 1953); Yokley, *The Place of the Planning Commission and the Board of Zoning Appeals in Community Life,* 8 Vand. L. Rev. 794, 802 (1955);

Originalmente la Ley de Planificación concedió el poder de otorgar variaciones y excepciones a la Junta de Apelaciones sobre Construcciones. En virtud del Plan de Reorganización núm. 11, que entró en vigor el 1 de julio de 1950, se suprimió la Junta de Apelaciones sobre Construcciones y sus funciones se transfirieron a la Junta de Planificación de Puerto Rico. Véase 23 L.P.R.A. pág. 197–200. El art. 26 de la Ley de Planificación concede a dicha Junta facultad para revisar las decisiones del Oficial de Permisos y para decretar ". . . cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse (1) por motivo de perjuicios ocasionados por circunstancias especiales, (2) por denegaciones viciosas para emitir los permisos necesarios, o (3) por cualesquier otras razones autorizadas en los reglamentos de la Junta de Planificación de Puerto Rico adoptados a virtud de esta ley; y a tal fin la Junta tendrá los mismos poderes del funcionario u organismo de cuya sentencia se apela." Véase la Ley núm. 213 de 1942, pág. 1107, art. 26; Ley núm. 434 de 1951, pág. 1227; 23 L.P.R.A. sec. 28. Como podrá notarse, el inciso (1) se refiere a las *variaciones* y el inciso (3) incluye las *excepciones.* En *Deliz* v. *Junta de Apelaciones,* 71 D.P.R. 138, 141 (1950) resolvimos que, con arreglo al art. 3 de la Ley núm. 429 de 1946 (Leyes pág. 1219; 23 L.P.R.A. sec. 32), ". . . las funciones del Oficial de Permisos son puramente ministeriales, enderezadas a velar por que los solicitantes den cumplimiento a toda ley y reglamentación relacionada con la construcción de edificios en Puerto Rico. De manera, pues, que si lo solicitado no se ajusta estrictamente a la ley, su única función es denegar el permiso. En cambio, es a la Junta a quien la ley concede amplia discreción

Reps, *Discretionary Powers of the Board of Zoning Appeals*, 20 Law & Contep. Prob. 280, 282–293 (1955); Gaylord, *Zoning: Variances, Exceptions and Conditional Use Permits in California*, 5 U.C.L.A.L.Rev. 179 (1958); 1 Yokley, *Zoning Law and Practice*, 2a ed. 1953, sec. 133; Metzenbaum, *The Law of Zoning*, 2a. ed. 1955, cap. IX-f-2-(b); 1 Rathkopf, *The Law of Zoning and Planning*, 647–784; Anotación en 58 A.L.R.2d 1083–1126.

para variar las disposiciones del Reglamento de Zonificación en casos en que por circunstancias especiales, dicho reglamento no pueda aplicarse en forma justa y razonable." Cf. Ludlow, La Zonificación en Puerto Rico (Informe Técnico núm. 3), 1946, págs. 35-37.

Dentro del marco fijado por las disposiciones de la Ley de Planificación antes mencionadas y de conformidad con las pautas, normas y guías que éstas determinan, la Junta procedió a adoptar el Reglamento de Zonificación creando varios tipos de distritos residenciales, comerciales e industriales, un distrito M (para rehabilitación y reclasificación) y otro distrito P (para uso público). En el distrito R-1 (casas de una sola familia) no se permitían originalmente hoteles. Véase el Reglamento de Zonificación, 1946, art. 18. En 1950 se enmendó el citado art. 18 para permitir en distritos R-1 el uso de edificios o pertenencias para "hoteles de turismo" mediante la adición del inciso (15). Decía así: "Artículo 18— Usos en Distritos R-1—En los distritos R-1 solamente se usarán los edificios o pertenencias para los fines expuestos a continuación, incluyendo sus edificios y usos accesorios . . . (15) Hoteles de Turismo, mediante aprobación de la Junta de Apelaciones, e incluyendo los servicios corrientemente relacionados con el funcionamiento de los mismos, pero no se permitirá rótulo comercial a la entrada de dicho hotel, paralelo a la calle y adosado a la pared que no exceda de un (1) metro cuadrado en área; el cual podrá tener una iluminación artificial no intermitente, y además, no se instalarán vitrinas o cualquier otra forma de anuncio en sus exteriores; Disponiéndose, que el ancho de cualquier patio delantero, lateral o posterior no será menor de quince (15) metros pudiendo la Junta de Apelaciones en circunstancias especiales permitir menor anchura de patio, particularmente donde el solar esté contiguo a un parque o área abierta de uso público debidamente dedicada y determinada en los planos de cualquier urbanización, o a una playa pública u otras extensiones de agua.

"Podrán proyectarse espacios para usos accesorios como parte del edificio principal y tanto éstos como los edificios accesorios en sí, podrán situarse en cualquier sección de aquella parte del solar donde se permite sea localizado el edificio principal, pero no dentro de un patio requerido. No obstante esta disposición, los edificios accesorios y espacios para usos accesorios que se permiten en los distritos R-1, podrán situarse en patios laterales o posteriores requeridos, siempre y cuando observen los requisitos del Artículo 21.

"Además, cualquier patio requerido podrá usarse para usos accesorios tales como canchas, piscinas, paseos, área de estacionamiento de vehículos o usos accesorios similares, siempre y cuando no se construyan estructuras cubiertas, gradas, kioskos o cualquier otra estructura que levante un nivel de más de un (1) metro sobre el terreno, exceptuándose las torres o postes necesarios para las canchas, piscinas o alumbrado y ornamentación de paseos.

"En dichos hoteles se requerirá suficiente espacio de estacionamiento para acomodar un vehículo por cada tres (3) habitaciones de alquiler, bien sea en el edificio principal, en un edificio accesorio, o en un área de estacionamiento de vehículos en el solar en que está enclavado dicho edificio principal; Disponiéndose, que no podrán usarse los patios requeridos para acomodar más de dos (2) vehículos por habitación." (Véase el Reglamento de Zonificación, revisado en 1950, que aparece en las págs. 95–106 de la Compilación de los Reglamentos de Planificación Para Puerto Rico (1952).(²) Además el art. 1 de dicho Reglamento definía el término "hotel de turismo" como sigue: "Un hotel cuyo diseño claramente expresa que el mismo fué proyectado para operar principal-

---

(²) El 22 de junio de 1955 la Junta de Planificación aprobó y adoptó un *Nuevo Reglamento de Planificación núm. 4 (Reglamento de Zonificación)* que fué debidamente aprobado y promulgado por el Gobernador de Puerto Rico el 13 de julio del mismo año. Empezó a regir 30 días después de dicha aprobación y fué remitido a la Asamblea Legislativa en su Cuarta Sesión Ordinaria del año 1956. Aparece publicado como el *Nuevo Reglamento de Zonificación* (1956).

mente en interés del turismo, y el cual tendrá como parte integrante y dentro de los límites de su solar y en proporción a sus máximas facilidades de acomodo, una o más de las siguientes atracciones típicas de turismo: (1) Piscinas y adecuadas· terrazas de descanso. (2) Desarrollo de playa o lago, piscinas de natación, o ambas, con facilidades de baño u otros deportes acuáticos, adecuadas para el servicio eficiente de sus huéspedes. (3) Facilidades adecuadas para el uso de caballos de silla, y para excursiones, y canchas de juego o facilidades para otros deportes al aire libre.

"Estos Hoteles de Turismo pueden incluir dormitorios o 'suites' con facilidades de cocina accesorias."

Así pues, la Junta en 1950 incluyó entre los usos permitidos en distritos R-1, los hoteles de turismo, *mediante aprobación de la Junta de Apelaciones sobre Construcciones* (que hoy día resulta ser la Junta de Planificación). Por supuesto, para los distritos R-1 hay muchos usos que se permiten sin exigir aprobación o autorización específica de la Junta: casas de una familia, casas de huéspedes o pupilos que no alberguen más de 7 personas, edificios docentes o religiosos, jardines, huertos, etc. Sin embargo, entre los usos permitidos en distritos R-1 hay otros que requieren autorización o aprobación específica de la· Junta: cementerios, instituciones filantrópicas, recreativas, correccionales o para dementes, sanatorios, hospitales, aeropuertos, estaciones públicas de ómnibus, estaciones de radio, hipódromos, parques y campos atléticos para fines comerciales, etc. Como hemos visto, los "hoteles de turismo" también caen en esta última categoría, en que el uso sólo se permite mediante la aprobación específica de la Junta.

██ Ahora bien, cuando el Reglamento de Zonificación permite el uso solicitado, pero exige la autorización específica de la Junta, ¿existen normas o guías para resolver si se debe conceder o denegar dicho permiso de uso que técnicamente es una "excepción" o un "permiso condicional"? Creemos que sí. En esos casos la Junta viene obligada a aplicar a los hechos concretos de cada caso las normas y guías establecidas en el

art. 10 del Reglamento de Zonificación Revisado. En el citado artículo se provee que los permisos para excepciones específicas, es decir, los casos en que el Reglamento requiere la intervención de la Junta de Planificación, se tramitarán como casos de "apelaciones normales" y que para resolver los mismos la Junta aplicará las siguientes normas: "La Junta de Planificación actuará en estos casos siempre y cuando que por medio del diseño, la construcción y la operación, se haya de proteger adecuadamente la salud, la seguridad y el bienestar de los ocupantes de la propiedad a construirse y de las propiedades limítrofes, y que no se menoscabe en forma alguna el suministro adecuado de luz y aire a la edificación a construirse ni a las propiedades vecinas, ni se aumente el peligro de fuego, ni se ocasione reducción o perjuicio alguno a los valores de la propiedad establecidos en las áreas vecinas; Disponiéndose, que tales actuaciones de la Junta de Planificación estarán en armonía con los fines y propósitos generales de este Reglamento y de la Ley de Planificación, y que se asegurará debida protección al interés público." (³)    Por otro

---

(³) El Nuevo Reglamento de Zonificación (1956) mantiene en vigor dichas normas en su artículo 10.00.  Cuando se solicita una "variación", son aplicables las disposiciones que para los casos de *apelaciones especiales* establece el art. 9 del Reglamento de Zonificación: ". . . la Junta de Planificación podrá autorizar variaciones en los requisitos de este Reglamento donde debido a las circunstancias especiales extraordinarias una aplicación literal de los mismos resulta realmente en la prohibición o restricción irrazonable del uso de una pertenencia, y donde se le demuestre a su satisfacción que la concesión de tales variaciones aliviará un perjuicio claramente demostrable que es casi una confiscación, a diferencia de un privilegio o conveniencia especial; Disponiéndose que las variaciones concedidas bajo esta disposición no constituirán enmiendas obvias y directas a los límites de cualquier distrito o disposición sobre zonificación contenidas en este Reglamento; y Disponiéndose, además, que existirán en cada caso cuando menos una de las siguientes circunstancias especiales: 1. La forma peculiar, excepcionalmente angosta o de poco fondo de un solar.  2. El tamaño de un solar bajo el mínimo requerido para casas de una familia en el distrito en que está localizado; Entendiéndose, que cuando un solar sea excepcionalmente pequeño en relación al edificio, podrá requerirse área adicional de solar.  3. Condiciones topográficas excepcionales.  4. Otras circunstancias especiales extraordinarias.

"La Junta de Planificación podrá igualmente considerar aquellas apelaciones de casos especiales en que se solicita la expedición o denegación de

lado, el art. 26 de la Ley de Planificación concede a cualquier parte directamente interesada en la expedición o denegación de un permiso de construcción o de uso, el derecho a solicitar la revisión por el Tribunal Supremo de cualquier actuación o decisión de la Junta. El alcance de esta revisión está limitada a "cuestiones de derecho". Esto deja a la Junta un margen amplio de discreción para el cumplimiento efectivo de los fines que persiguen la ley y los reglamentos de zonificación. Sin embargo, el poder judicial conserva la facultad de corregir cualquier abuso de la discreción administrativa y aun las conclusiones de hecho de la Junta no son válidas, como cuestión de derecho, a menos que haya evidencia sustancial en el récord para sostenerlas. Cf. Gellhorn & Byse, *Administrative Law* (1954) 426–577; Davis, *Administrative Law* (1951) 812–865; 868–928; Jaffe, *Judicial Review: Question of Law*, 69 Harv. L. Rev. 239 (1955); *Judicial Review: Question of Fact*, 69 Harv. L. Rev. 1020 (1956) y *Judicial Review: Constitutional and Jurisdictional Fact*, 70 Harv. L. Rev. 953 (1957). Cf. *Concepción* v. *Junta de Contabilidad*, 80 D.P.R. 194 (1958).

---

un permiso de construcción o uso de una pertenencia cuando ésta está situada enteramente o en parte dentro de las líneas de carreteras o calles incluídas en un Mapa Oficial, o en un Distrito P, y podrá conceder variaciones bajo condiciones razonables a los requisitos de este Reglamento, donde tales concesiones aliviarán un perjuicio claramente demostrable que es casi una confiscación, a diferencia de un privilegio o conveniencia especial y siempre y cuando se le demuestre al mismo tiempo, que la pertenencia en cuestión no producirá ingresos razonables al dueño, a menos que se conceda dicho permiso y que el beneficio que habría de recibir el público si se negare tal permiso no guardará proporción con los daños que se causarían al solicitante del permiso." Los requisitos fundamentales para la concesión de una variación han sido establecidos con toda precisión por la jurisprudencia. *Otto* v. *Steinhilber*, 24 N.E.2d 851 (N. Y., 1939); *Levy* v. *Board of Standards and Appeals*, 196 N. E. 284 (N. Y., 1935); *Moriarty* v. *Pozner*, 121 A.2d 527 (N. J., 1956). Véanse además Reps, *Discretionary Powers of the Board of Zoning Appeals*, 20 Law & Contemp. Prob. 280, 282–289 (1955); 1 Yokley, *Zoning Law and Practice*, (2a ed. 1953); 324–352; 2 Metzenbaum, *The Law of Zoning* (2a ed. 1955) 690–698, 766–812; 1 Rathkopf, *The Law of Zoning and Planning* (3a ed. 1956) 647–718; Anotación en 58 A.L.R.2d 1083 y los casos allí citados.

██ Sin duda, la Legislatura no puede delegar poderes arbitrarios e ilimitados a los organismos administrativos. La ley debe contener siempre normas adecuadas que sirvan de guía y que limiten el uso del poder delegado, ya sea éste el de promulgar reglamentos con fuerza de ley (*rule-making*) o el de resolver controversias específicas a la luz de hechos concretos (*adjudication*). Pero no es indispensable que la ley fije normas detalladas y minuciosas. Dadas las condiciones sociales y económicas modernas, (1) la Legislatura no puede considerar los detalles de los programas de gobierno: su función esencial es la de establecer pautas generales y si tratase de intervenir en los detalles no podría desempeñarla a cabalidad; (2) con frecuencia es preciso desarrollar programas que exigen la supervisión constante, el conocimiento técnico y la experiencia especializada de organismos administrativos; y (3) siempre resulta esencial para la realización efectiva de esos programas conceder un amplio margen de discreción a dichos organismos. Por eso, la delegación de poderes puede hacerse constitucionalmente a base de normas amplias y generales. Véanse *Hilton Hotels* v. *Junta de Salario Mínimo*, 74 D.P.R. 670, 692–693 (1953); *Giuseppi* v. *Walling*, 144 F.2d 608 (C. A. 2, 1944); *Fahey* v. *Mallonee*, 332 U. S. 245 (1947); *Lichter* v. *United States*, 334 U. S. 742 (1948); Gellhorn & Byse, *op. cit.* supra, 62–159; Davis, *op. cit.* supra, 41–88; Jaffe, *Delegation of Legislative Power*, 47 Col. L. Rev. 359, 561 (1947); Vanderbilt, *The Doctrine of the Separation of Powers and its Present-Day Significance* (1953). Cf. Mannheim, *Freedom, Power and Planning* (1950); Finer, *The Theory and Practice of Modern Government* (rev. ed. 1949) 94–115; Friedrich, *Constitutional Government and Democracy* (rev. ed. 1950) 173–188; Robson, *Justice and Administrative Law* (3a ed. 1951). Creemos que las normas fijadas por la Ley de Planificación a la Junta, al delegarle poderes para establecer "variaciones" y "excepciones" en el Reglamento de Zonificación, son adecuadas y suficientes. La validez de delegaciones similares ha sido reco-

nocida en casi todos los estados.   Véanse *Beirn* v. *Morris*, 103 A.2d 361 (N. J. 1954); *Schmidt* v. *Board of Adjustment*, 88 A.2d 607 (N. J. 1952); *Ward* v. *Scott*, 93 A.2d 385 (N. J. 1952); *Barbara Realty Co.* v. *Zoning Board of Review*, 138 A.2d 818 (R. I. 1958); *State* v. *Guffey*, 306 S.W.2d 552 (Mo. 1957); *Katzin* v. *McShain*, 89 A.2d 519 (Pa. 1952); *Building Comm'r of Medford* v. *C. & H. Co.*, 65 N.E.2d 537 (Mass. 1946); *Aloe* v. *Dassler*, 106 N.Y.S.2d 24 (1951), confirmado en 105 N.E.2d 104 (1952); *Jennings* v. *Conn. Lt. & P. Co.*, 103 A.2d 535 (Conn. 1954); *Sellors* v. *Town of Concord*, 107 N.E.2d 784 (Mass. 1952); *Montgomery County* v. *Merlands Club*, 96 A.2d 261 (Md. 1953); *Oursler* v. *Board of Zoning Appeals*, 104 A.2d 568 (Md. 1954); Reps, *Discretionary Powers of the Board of Zoning Appeals*, 20 Law and Contemp. Prob. 280 (1955);   Anotación en 58 A.L.R.2d 1083 y los casos allí citados.

No hay duda de que hoy día la zonificación, como parte integral del planteamiento urbanístico, es imprescindible para resolver los problemas humanos, sociales y económicos derivados principalmente de: (1) la densidad de población en las áreas urbanas; (2) el tráfico y la circulación en el interior de la ciudad; (3) la centralización industrial e instalación de nuevas fábricas en el casco urbano; (4) la urgencia de proveer viviendas adecuadas, parques, espacios de recreación y descanso, luz y aire para la salud física y mental de los habitantes; (5) la necesidad de asegurar la armonía de conjunto y los valores estéticos de la comunidad; y (6) la obligación de conservar los valores históricos en las zonas antiguas.   O dicho en forma negativa: para evitar los graves males, desajustes y deficiencias materiales y humanos que produce la desorganización en las áreas urbanas, hay que establecer un programa efectivo de zonificación y planeamiento.   Véanse G. Alomar Esteve, Teoría de la Ciudad—Ideas Fundamentales para un Urbanismo Humanista (1947); Id., Comunidad Planeada (1955); 15 *Encyclopedia of the Social Scien-*

*ces* 538–539; Picó, Diez Años de Planificación en Puerto Rico (1952). Cf. *Berman* v. *Parker*, 348 U. S. 26 (1954); *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365 (1926). Los arts. 3, 9 y 26 de la Ley de Planificación trazan con suficiente precisión las líneas generales que la Junta debe seguir al ejercer su poder de reglamentación en materia de zonificación. La facultad de establecer reglas para "variaciones" y "excepciones" se rige por las mismas normas que allí se establecen para dictar los reglamentos de zonificación. Estas son sin duda suficientes y adecuadas.

Obviamente, las "excepciones" o permisos de uso condicionales constituyen el único método efectivo para controlar el uso de edificios y pertenencias que resultan ser infrecuentes o extraordinarios en ciertas zonas o distritos. En efecto, aunque la construcción y operación de hospitales, cementerios, hoteles de turismo, etc. en una zona residencial no ocurre a menudo, en ciertos casos podría tener un impacto perjudicial sobre el distrito. Todo depende de las circunstancias específicas en cuanto al tiempo, lugar y modo del uso. Resulta pues muy difícil hacer de antemano reglas detalladas aplicables a todos los casos. Para alcanzar la flexibilidad necesaria, las leyes y reglamentos de zonificación generalmente permiten dichos usos, pero requieren que el dueño obtenga previamente un permiso especial. La delegación del poder para establecer normas sobre la concesión de dichos permisos especiales o "excepciones", puede hacerse válidamente a base de normas como las siguientes: (1) que se dé debida consideración a los propósitos generales y a la intención que inspira la zonificación; (2) que se proteja adecuadamente la salud, la seguridad y el bienestar general de la comunidad; (3) que se consideren factores tales como la protección del valor de las propiedades vecinas, el tráfico, la densidad de población, el suministro adecuado de luz y aire, la protección contra incendios, etc.; (4) que se asegure la armonía con el carácter esencial del distrito y la debida protección al interés público.

Véanse *Romig* v. *Weld*, 87 N.Y.S.2d 580 (1949); *Aloe* v. *Dassler*, 106 N.Y.S.2d 24 (1951), confirmado en 105 N.E.2d 104 (N. Y. 1952); *Sellors* v. *Town of Concord*, 107 N.E.2d 784 (Mass. 1952); *Ward* v. *Scott*, 93 A.2d 385 (N. J. 1952); *Oursler* v. *Board of Zoning Appeals*, 104 A.2d 568 (Md. 1954); *Burnham* v. *Board of Appeals*, 128 N.E.2d 772 (Mass. 1955); *State* v. *Guffey*, 306 S.W.2d 552 (Mo. 1957); *Barbara Realty Co.* v. *Zoning Board of Review*, 138 A.2d 818 (R. I. 1958); *Katzin* v. *McShain*, 89 A.2d 519 (Pa. 1952); Anotación en 58 A.L.R.2d 1083, 1108–1126; Reps, *op. cit.* supra, 289–293. Estas son las normas que se deducen al considerar en conjunto las disposiciones contenidas en los arts. 3, 9 y 26 de la Ley de Planificación. Además, la Junta dió cumplimiento al mandato legislativo, estableciendo normas en el art. 10 del Reglamento de Zonificación para determinar qué factores específicos deben considerarse al resolver si debe denegarse o concederse una "excepción" o permiso de uso especial. Por otro lado, el art. 26 de la Ley de Planificación provee, como indicamos anteriormente, que las actuaciones o decisiones de la Junta en estos casos podrán ser revisadas judicialmente. Así pues, la Junta no puede negar su aprobación arbitraria o caprichosamente. Tiene que aplicar las normas trazadas por la Ley de Planificación y el art. 10 del Reglamento de Zonificación. Y su conclusión debe estar fundada en hechos concretos establecidos en una vista que se ajuste a los requisitos del debido proceso de ley. Jaffe, *Administrative Law* (1953) 10–85, 112–222, 490–620. No existe pues peligro alguno para los derechos de propiedad de los individuos. El objetivo de la planificación urbana es precisamente, como señala Alomar, "restringir ciertas libertades de unos pocos para aumentar las libertades de los más . . . no olvidando que los puntos en los cuales la libertad se halla restringida por el plan son los puntos en los cuales esta libertad se hallaría restringida por la ausencia del plan . . . (que permitiría) . . . la explotación irregular y caprichosa del suelo."

Alomar, Comunidad Planeada (1955) 214.(⁴) Por tanto, estamos convencidos de que es válido el art. 18, inciso 15, de Reglamento de Zonificación Revisado.

## II

El art. 10 del Reglamento de Zonificación Revisado dispone que *"pueden radicarse directamente y en primera instancia ante la Junta de Planificación"* los casos en que el Reglamento requiere la intervención de la Junta, es decir, las solicitudes de permiso para "excepciones". El Nuevo Reglamento de Zonificación (1956) contiene una disposición idéntica. Por eso, la solicitud de autorización directa en este caso se presentó ante la Junta de Planificación y no ante el Oficial de Permisos. ¿Tenía autoridad la Junta para conocer en primera instancia de dicha solicitud? Creemos que sí.

Aunque el art. 26 de la Ley de Planificación usa el término "apelaciones" al conceder facultad a la Junta para otorgar variaciones y excepciones, sería absurdo exigir la decisión previa del Oficial de Permisos sobre una solicitud de "excepción". En efecto, como resolvimos en *Deliz* v. *Junta de Apelaciones,* 71 D.P.R. 138, 141 (1950), " . . . las funciones del Oficial de Permisos son puramente ministeriales enderezadas a velar porque los solicitantes den cumplimiento a toda ley y

---

(¹) Cómo reconciliar la planificación con las libertades individuales y los valores de una sociedad democrática constituye sin duda uno de los problemas más importantes de nuestro tiempo. Se trata de la planificación en su sentido más amplio: el planeamiento social y económico integral. Véanse Mannheim, *Diagnosis of Our Time* (1944) y *Freedom, Power and Planning* (1950); Dahl and Lindblom, *Politics, Economics and Welfare* (1953); Keilhan, *Principles of Private and Public Planning* (1951); Popper, *The Open Society and its Enemies* (ed. rev. 1950); Wootton, *Freedom Under Planning* (1945); Galbraith, *American Capitalism—The Concept of Countervailing Power* (1952); Parsons and Smelser, *Economy and Society* (1957). Sin embargo, el planeamiento que nos interesa aquí es mucho más limitado: se refiere únicamente a lo que se ha llamado "ecología humana", es decir, la distribución espacial y organización funcional de la comunidad. Véanse Alomar, *op. cit.* supra, 23-164; Dickinson, *The West European City: A Study in Urban Geography;* Glass, *The Social Background of a Plan: A Study of Middlesbrough;* Orlans, *Stevenage: A Sociological Study of a New Town;* y Burgess, *The Urban Community.*

reglamentación relacionada con la construcción de edificios en Puerto Rico. De manera, pues, que si lo solicitado no se ajusta estrictamente a la ley, su única función es denegar el permiso . . ." Por otro lado, la sec. 26 de la Ley de Planificación dispone expresamente que, cuando se solicita una "excepción", la Junta tendrá los mismos poderes del Oficial de Permisos y podrá decretar cualquier orden o resolución que a su juicio deba dictarse. 23 L.P.R.A. sec. 28.

Interpretando disposiciones similares a las que contiene el art. 26 de nuestra Ley de Planificación, la jurisprudencia de muchos estados establece que el organismo administrativo a quien se delega el poder de conceder excepciones o permisos especiales tiene jurisdicción para conocer en primera instancia de una solicitud de excepción o permiso especial. Véanse *Roosevelt Field, Inc.* v. *Town of North Hempstead*, 98 N..Y S.2d 350, 351 (1950) ; *Matter of Hickox* v. *Griffin*, 79 N.Y. S.2d 193 (1948). *Cf. Levy* v. *Board of Standards and Appeals,* 196 N.E. 284 (N.Y. 1935) ; *In re Pine Hill, Inc.*, 15 S.E.2d 1 (N. C. 1941). La doctrina también admite que dichos organismos tienen jurisdicción original para conocer de solicitudes sobre "excepciones", aunque de ordinario sólo ejercen funciones de revisión. Véanse 1 Yokley, *op. cit.* supra, 315–316; 2 Metzenbaum, *op. cit.* supra, 913–917; 1 Rathkopf, *op. cit.* supra, 773–776; Bassett, *Zoning* (1940) 117–169. En consecuencia, resolvemos que es válida la disposición del art. 10 del Reglamento de Zonificación y que la Junta podía conocer en primera instancia de la solicitud del recurrente para la construcción y operación de un hotel de turismo en un distrito R–1. Aunque hay jurisprudencia conflictiva sobre este extremo, creemos que la regla aquí sentada es la más lógica y racional, teniendo en cuenta las funciones muy limitadas que concede la ley al Oficial de Permisos y la naturaleza de una solicitud de "excepción".

### III

Procede por último analizar las cuestiones de índole procesal que se suscitan en el apuntamiento de errores del

recurrente. La Junta de Planificación ejerce poderes cuasi-judiciales al considerar y resolver una solicitud de excepción (autorización directa) para la construcción y operación de un hotel de turismo en una zona o distrito R-1. Su función consiste en decidir una controversia particular, aplicando a los hechos específicos del caso las normas que establecen los artículos 10 y 18 (15) del Reglamento de Zonificación. En consecuencia, tiene que celebrar una vista administrativa de carácter cuasi-judicial, ajustándose a los requisitos del debido proceso de ley. Es imprescindible que la Junta haga conclusiones de hecho fundadas en la prueba que se presente en dicha vista. Además, debe exponer las razones o fundamentos que sirven de base a su decisión. Véanse *Godreau & Co.* v. *Comisión de Servicio Público*, 71 D.P.R. 649, 655–657 (1950). Cf. *Eastern Sugar Associates* v. *Junta Azucarera de Puerto Rico*, 77 D.P.R. 374, 385–392 (1954).

La Junta no podía denegar la solicitud de excepción (autorización directa) en el caso de autos diciendo sencillamente que el uso de la propiedad del recurrente para un hotel de turismo es indeseable. Tampoco podía limitarse a hacer conclusiones generales como las siguientes: (1) "que los alrededores de la pertenencia no reunen las condiciones deseables y necesarias para el establecimiento de un hotel de turismo en la misma" y (2) "que el área en que se proyecta establecer . . . el hotel de turismo está siendo usada en forma tal que hace indeseable el llevar a cabo un proyecto para la atracción de turistas". En su decisión la Junta debió exponer los fundamentos de hecho, refiriéndose tanto a los hechos básicos que estimó probados, luego de resolver cualesquier conflictos en la prueba, como a las inferencias de hecho que en última instancia creyó justificadas. Por otra parte, la Junta debió exponer las razones o fundamentos de derecho que sirvieron de base a su decisión. De otro modo, es obvio que toda revisión judicial sería imposible. Como dijimos en el caso de *Godreau*, supra: ". . . no bastan un récord de la prueba más una simple decisión. Solamente si [el orga-

nismo administrativo] . . . llega a conclusiones sobre hechos básicos o intermedios y definitivos, es que están las cortes en posición de determinar si la resolución . . . 'es o no razonable y de acuerdo con la ley'.  Las conclusiones deben ser lo suficientemente definidas y ciertas para poner a las cortes en posición de revisar la decisión y determinar si los hechos tal y como los encontró probados [el organismo administrativo] ofrecen una base razonable para tal resolución." (656) Véanse además *United States* v. *Chicago M., St. P. and P. R. R.*, 294 U. S. 499 (1935) ; *Securities Comm'n* v. *Chenery Corp.*, 332 U. S. 194 (1947) ; *United States* v. *Pierce Auto Lines*, 327 U. S. 515 (1946) ; Benjamin, *Administrative Adjudication* (1942) 251–261; Davis, *Administrative Law* (1951) 521–537, 539–544, 545–562; Jaffe, *Administrative Law* (1953) 445–466; Gellhorn & Byse, *op. cit.* supra 1149–1182.

Precisamente en casos sobre concesión o denegación por un organismo administrativo de excepciones o variaciones a los Reglamentos de Zonificación, la mayoría de los tribunales han exigido que la decisión administrativa esté respaldada por conclusiones de hecho y de derecho.  En *Petrarca* v. *Zoning Board of Review*, 80 A.2d 156, 157 (R. I. 1951) se resolvió que: "La queja del peticionario de que la Junta no dió razón alguna para su decisión está justificada.  Aquí, como en otros casos que han llegado ante nos, la Junta no cumplió el deber que en repetidas ocasiones hemos apuntado de . . . consignar, aunque sea en una forma breve, la razón o razones para su actuación.  Las partes y este Tribunal tienen derecho a conocer las razones que sirven de base a la decisión de la Junta para evitar especulación, duda y dilación innecesaria.  [Citas de casos.]  A menos que la Junta de Zonificación cumpla con ese mandato, corre el riesgo de una revocación si este Tribunal no puede determinar a base del récord que existieron razones suficientes y adecuadas para la decisión en cuestión."  En *Prusik* v. *Board of Appeal of Boston*, 160 N. E. 312, 314–315 (Mass. 1928) se indicó claramente que, para proteger los derechos públicos y privados envueltos, las decisiones sobre

excepciones y variaciones deben estar fundadas en conclusiones adecuadas, sobre todo cuando el estatuto concede el derecho a revisión judicial. Así pues, la Junta no puede limitarse a "recitar" o a repetir frases generales que aparecen en el Reglamento de Zonificación como único fundamento de su decisión. *People ex rel Church* v. *Walsh*, 155 N. E. 575 (N. Y. 1927). Véanse además, *Bradley* v. *Board of Boston*, 150 N. E. 892 (Mass. 1926); *Collins* v. *Behan*, 33 N.E.2d 86 (N. Y. 1941); 1 Yokley, *op. cit.* supra, 356–358; Metzenbaum, *op. cit.* supra, 977–986.

▪ Por supuesto, la Junta de Planificación no podía tomar razón de ninguna recomendación hecha por la Oficina de Turismo después de terminarse la vista pública, pues el recurrente tenía derecho en dicha vista a confrontarse con la recomendación, contrainterrogar a los autores del informe, presentar prueba en contrario para explicarlo o rebatirlo y argumentar contra el mismo. En *Escudero* v. *Junta de Salario Mínimo*, 66 D.P.R. 594, 600 (1946), después de terminada la audiencia pública ante la Junta de Salario Mínimo y antes de emitir ésta su decreto en el caso, el Presidente de la Junta ordenó una investigación y recibió ciertos informes sobre los gastos de producción de varios patronos. No se dio a los patronos oportunidad alguna de examinar, rebatir o explicar dichos informes. Por esa razón anulamos el decreto diciendo lo siguiente: ". . . la Junta debe actuar a base de la evidencia recibida en la audiencia pública . . . [No] puede decirse que existe una verdadera audiencia pública cuando la Junta, o uno de sus miembros, solicita y obtiene evidencia secreta que destruya o modifique el efecto de la evidencia públicamente presentada, sin dar oportunidad a las partes interesadas para conocer, explicar o rebatir esa evidencia secreta." (Pág. 602.) En el caso de *Escudero* la evidencia secreta era de tal carácter que no podía haber dejado de afectar el criterio de la Junta. En el caso de autos la propia Junta de Planificación hace constar en su resolución, como uno de los motivos para denegar el permiso de uso, que: *"La Oficina de Turismo,*

*no recomienda favorablemente este proyectado hotel de turismo.*" Es obvio que esta irregularidad basta para revocar la resolución recurrida. Debe señalarse que, en *Corporación Azucarera Saurí & Subirá* v. *Junta Azucarera de Puerto Rico*, 77 D.P.R. 397, 410–411 (1954), también condenamos una actuación similar de un organismo administrativo: ". . . La Junta hace constar en su opinión que a virtud de la facultad conferídale, ella ordenó a su químico inspector que realizara una investigación en los archivos y récords de la central sobre la forma en que habían sido liquidadas por ésta las cañas del colono durante varias zafras, hizo que ese informe formara parte de su resolución y lo tomó en consideración al resolver el caso que tenía ante su consideración. Ella procedió así sin dar oportunidad a la peticionaria para intervenir en relación con esa prueba . . . El proceder seguido por la Junta a este respecto fué . . . erróneo." El derecho a una vista pública no tendría sentido alguno si se permitiera a la Junta fundar su decisión en evidencia recibida sin el conocimiento de las partes y fuera de la audiencia, sin dar a las partes interesadas oportunidad de rebatirla o explicarla mediante la repregunta o la presentación de otra evidencia en contrario. Véanse *Alemañy* v. *Comisión Industrial*, 63 D.P.R. 601, 603–604 (1944); *Mayagüez Sugar Co., Inc.* v. *Tribunal de Apelación*, 60 D.P.R. 753, 767 (1942); *English* v. *Long Beach*, 217 P.2d 22 (Cal. 1950); *Ohio Bell Telephone Co.* v. *Public Utilities Commission of Ohio*, 301 U. S. 292 (1937); *United States* v. *Abilene and Southern Ry. Co.*, 265 U. S. 274 (1924); *Interstate Commerce Commission* v. *Louisville and Nashville R. R. Co.*, 227 U. S. 88 (1913); Benjamin, *Administrative Adjudication* (1942) 83–96, 194–221; Gellhorn & Byse, *op. cit.* supra, 918–939; Jaffe, *Administrative Law* (1953) 395–397; Anotación en 18 A.L.R.2d 552 (1951) y los casos allí citados.

Nótese que, con posterioridad a la decisión en el caso de autos, la Junta de Planificación adoptó el 15 de mayo de 1957 las *Reglas de Procedimiento a Regir en las Vistas Ad-*

*ministrativas Ante la Junta de Planificación de Puerto Rico.* Dichas reglas se aplican a todos los casos en que la Junta actúa de acuerdo con lo dispuesto en el art. 26 de la Ley núm. 213 de 1942 (23 L.P.R.A. sec. 28). Por tanto, son aplicables a los casos en que se solicitan excepciones o variaciones. La Regla 16 dispone expresamente lo siguiente:

"Después que se haya presentado la evidencia por todas las partes, el abogado o representante del peticionario o promovente presentará su argumentación ante la Junta. Durante el curso de la misma explicará con claridad todos los puntos de hecho y de derecho sobre los cuales intente confiar para la investigación, orden o decreto según fuere el caso. Luego, el abogado o representante del opositor o querellante, de haber alguno, presentará su caso.

*"Nada que no haya sido introducido en evidencia, podrá considerarse como tal ni formará parte del récord de la vista, ni podrá considerarse en la decisión que emita el Examinador. El Examinador deberá recibir en evidencia todo aquello que se le ofrezca como tal. No deberá actuar a base de presunciones o de su conocimiento personal o del de cualquier otro funcionario de la Junta; o de cualquier otra evidencia que no figure en el récord de la vista.*

"Cuando parte de un acto, declaración, conversación o escrito, se ofreciere en evidencia por una de las partes, la totalidad del mismo asunto podrá ser investigada por la otra parte.

*"El Examinador o 'Master' no deberá recibir ni considerar evidencia sin antes haber advertido de ello a las partes y de ofrecer una oportunidad para que la evidencia presentada pueda ser refutada.*

"Toda solicitud, moción, escrito, mapa, fotografía, plano, carta, o cualquier otra documentación que figure en el expediente del caso en un tribunal administrativo y que pudiendo ofrecerse en evidencia, no fuere presentado y admitido como tal, *no deberá ser considerado ni ser base para emitir una decisión."* (Bastardillas nuestras.)

La Junta en la resolución recurrida consignó que: *". . . luego de realizada una inspección ocular de la finca [del peticionario], de los edificios que enclavan en la misma, así como del uso que a dichos edificios se les viene dando, se*

*ha determinado que la pertenencia no es propicia para el establecimiento de un hotel de turismo.*" No hay constancia en el récord elevado por la Junta en el sentido de haber sido ella la que realizó tal inspección. Los documentos que hemos examinado más bien muestran que fué la Oficina de Turismo la que realizó dicha inspección. De todos modos, la Junta no dió aviso previo al peticionario de que se proponía realizar una inspección ocular de la propiedad y de las áreas vecinas. Tampoco consignó en el récord los resultados de dicha inspección. Por tanto, (1) no se dió oportunidad al peticionario de refutar esa prueba durante la vista; y (2) no se formó un récord completo de los procedimientos habidos que permita una revisión judicial adecuada. Creemos que el proceder seguido por la Junta a este respecto fué erróneo.

█ Un organismo administrativo tiene derecho a investigar por su cuenta hechos que considere pertinentes para la resolución de un caso. No tiene que depender exclusivamente de la prueba testifical y documental que las partes interesadas deseen presentar en la vista. Y uno de los medios de obtener tal información es la inspección ocular. Sin embargo, es imprescindible: (1) notificar a las partes interesadas para que éstas puedan acudir a la inspección ocular, si así lo desean; y (2) consignar en el récord de la vista pública todos los hechos constatados mediante la inspección ocular. Véase Gellhorn & Byse, *op. cit.* supra, 927–932 y los casos allí citados; 18 A.L.R.2d 552, 571–573.

█ Al revisar las órdenes y actuaciones de la Junta de Planificación, en los casos incluídos en el art. 26 de la Ley (23 L.P.R.A. sec. 28), la función judicial está limitada a "cuestiones de derecho". Sin embargo, constituye una "cuestión de derecho" determinar si las conclusiones de hecho que sirven de base a la orden administrativa, están sostenidas por evidencia sustancial. En *Acosta* v. *Junta de Planificación,* 71 D.P.R. 578, 581 (1950) y en *Fuertes* v. *Junta de Planificación,* 76 D.P.R. 644, 648 (1954), resolvimos que si la Junta aquilata la prueba arbitrariamente, ello constituiría un error

de derecho. Claro está, las conclusiones de hecho de la Junta de Planificación no pueden modificarse si existe una base racional en la prueba para las mismas. Como dijimos en *Seashore Realty and Investment Co.* v. *Junta de Planificación*, 75 D.P.R. 142, 153 (1953): "... no podemos alterar una resolución de la Junta a menos que ésta, como cuestión de derecho, haya actuado arbitrariamente abusando de su discreción o se haya excedido en las facultades que le confiere la ley." La regla de la "evidencia sustancial" sirve precisamente para evitar que mediante la revisión judicial se substituya "... el criterio del tribunal por el de la agencia administrativa cuya actuación—generalmente en materia especializada—se intenta revisar." *Ledesma, Admor.* v. *Tribunal de Distrito*, 73 D.P.R. 396, 401 (1952). Véanse además *Concepción* v. *Junta de Contabilidad*, 80 D.P.R. 194, 199–200 (1958); *Rivera* v. *Benítez*, 73 D.P.R. 377, 381–383 (1952); Jaffe, *Judicial Review: Question of Law*, 69 Harv. L. Rev. 239 (1955); *Judicial Review, Question of Fact*, 69 Harv. L. Rev. 1020 (1956); Davis, *op. cit.* supra, 868–928. Para que la revisión judicial pueda limitarse a las cuestiones de derecho (incluyendo la de determinar si las conclusiones de hecho están sostenidas por evidencia sustancial) es indispensable que la Junta de Planificación forme un récord completo de los procedimientos llevados a cabo ante ella en vistas cuasi-judiciales. Este récord debe contener toda la prueba documental y toda la evidencia oral admitida. Allí deben constar también todos los hechos que se hayan constatado mediante una inspección ocular.(5)

---

(5) La Junta de Planificación puede tomar conocimiento oficial de ciertos hechos. La jurisprudencia ha definido lo que puede incluirse en el conocimiento oficial administrativo. Véase Gellhorn & Byse, *op. cit.* supra, 940–1009; Davis, *op. cit.* supra, 476–520. La mejor práctica es informar a las partes interesadas, siempre que sea posible en el curso de la vista, sobre el contenido de cualquier materia de la cual la Junta se proponga tomar conocimiento oficial y dar oportunidad razonable para que las partes sometan información en cuanto a si procede tomar conocimiento oficial de dicha materia y sobre su contenido. Véase 18 A.L.R.2d 552, 573–578; Jaffe, *Administrative Law* (1953) 380 -404. Al respecto, véanse las reglas 23 y

Lo anteriormente expuesto es suficiente para anular la resolución recurrida y devolver el caso a la Junta de Planificación. Sin embargo, creemos conveniente señalar antes de terminar esta opinión, que la Junta de Planificación no resolvió este caso después de expirar el término que le concede el art. 26 para dictar su resolución en casos sobre excepciones. El citado artículo fijaba a la Junta un término de treinta (30) días después de la vista para dictar resolución. No obstante, ese término podía, según la ley, ". . . ser interrumpido por debida o justa razón." Nada en los autos demuestra que no existió una debida o justa razón para interrumpir tal término en este caso. (⁶)

*Se anulará la resolución recurrida y se devolverá el caso a la Junta de Planificación para ulteriores procedimientos compatibles con esta opinión.*

El Juez Asociado Sr. Santana Becerra no intervino.

El Juez Asociado Sr. Belaval concurre con los resultados.

24 que estableció la Junta de Planificación en 1957 para el procedimiento en vistas administrativas. La Regla 23 dispone: "El Examinador o la Junta podrá tomar conocimiento judicial de un hecho si éste es notoriamente cierto, que no esté sujeto a ser controvertido. Podrá también tomar conocimiento de todo aquello que sea de conocimiento público y de todo hecho científico generalmente aceptado. Podrá también tomar conocimiento de todo aquel hecho, estatuto o ley del cual usualmente un tribunal de justicia tomaría conocimiento. Podrá tomar conocimiento de sus propias decisiones, pero no podrá aceptar como ciertos, sin evidencia que los apoye, hechos probados en otros procedimientos." La Regla 24 dispone: "Cuando el Examinador o la Junta estime necesario o conveniente podrá ordenar a iniciativa propia o a petición de una parte en el procedimiento, una inspección ocular y podrá actuar a base de la experiencia o conocimiento derivado de tal inspección, siempre y cuando que dichos conocimientos o experiencias derivadas de una inspección formen parte integral del récord."

(⁶) Véase la Ley núm. 434 de mayo 14 de 1951 (Leyes, pág. 1227). La Ley núm. 34 de mayo 11 de 1955 (Leyes, pág. 113) extendió el término a sesenta (60) días, conservando la disposición de la ley anterior: ". . . *a menos que tal término sea interrumpido por debida o justa razón.*"