# 2000 DTA 152

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ
PANEL I**

PLAZA ISABELA DEVELOPERS, S.E.
Peticionarios

v.

DISCOVERY PROPERTIES DEVELOPMENT, S.E.;
JUNTA DE PLANIFICAC1ON DE PUERTO RICO
Recurridos

Núm. KLRA-2000-00174

San Juan, Puerto Rico, a 19 de junio de 2000

Panel integrado por su Presidenta, la Juez López Vilanova
y los Jueces Córdova Arone y Escribano Medina

López Vilanova, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Plaza Isabela Developers solicita revisión de una resolución emitida por la Junta de Planificación, el 4 de noviembre de 1999, notificada el 8 de diciembre de 1999. Mediante la resolución recurrida, la Junta aprobó una consulta para la ubicación de un centro comercial en el municipio de Isabela, en un Distrito Residencial Cero (R-0).

Examinemos los hechos que motivaron la presentación del recurso de epígrafe.

El 27 de octubre de 1998, Discovery Properties Development, S.E., por conducto del Ingeniero Rafael Rodríguez, sometió a la consideración de la Junta de Planificación la consulta Núm. 98-02-1017-JPU para la ubicación de un proyecto comercial en un Distrito Residencial Cero (R-0).

El predio objeto de consulta tiene una cabida de 15.95 cuerdas y es parte de una finca de mayor cabida que ubica al norte de la Carretera Estatal Núm. 2, kilómetro 111.6 en el Barrio Mora del Municipio de Isabela.

El predio está delimitado por el norte con la Sucn. de William Alfaro; por el sur, con las propiedades del Sr. Manuel Pérez, Gabriel Pellot y Francisco Pellot; por el este con la Sucn. de William Alfaro, y por el oeste con la Sucn. de William Alfaro y el Departamento de Educación.

La topografía del proyecto es mayormente semillana y es parte de un terreno de mayor cabida que es utilizado como vaquería.

El 9 de abril de 1999, la Junta celebró vista pública.

Discovery Properties propuso la ubicación de un proyecto comercial de 149,000 pies cuadrados. El proyecto consiste de un local de venta al detal con un área de 30,000 pies cuadrados de construcción y novecientos ochenta y un (981) espacios de estacionamiento. ■

Sobre el predio objeto de consulta, Discovery Properties Development, S.E. sometió un contrato de opción de compra entre la recurrente, representada por los señores Ramón Arbona García y Wilfredo Palau Hernández, como optantes, e Hiram, William, Hilda, Willie, Zaida, Enrique, Ana, todos de apellido Alfaro Juarbe, y Doña Carmen Juarbe Aldarondo vda. de Alfaro, como dueños de los terrenos. El contrato de opción se acompañó con varias escrituras, con el fin de acreditar la titularidad de la finca.

La oficial examinadora determinó y consignó en su informe que dichos documentos no acreditaban la titularidad de los cedentes.

El Centro Unido de Detallistas y Comerciantes del pueblo de Isabela comparecieron a la vista para oponerse al proyecto propuesto.

Entre las agencias consultadas por la Junta, figuran la Autoridad de Acueductos y Alcantarillados (AAA), la Autoridad de Carreteras (AC), la Junta de Calidad Ambiental y el Departamento de Agricultura.

La oficial examinadora rindió informe sobre Audiencia Pública en el que no recomendó la aprobación de la consulta, por carecer los proponentes de capacidad jurídica y por entender que el proyecto propuesto priva a la comunidad de un terreno de alta productividad agrícola.

No obstante, el 4 de noviembre de 1999, la Junta de Planificación aprobó la consulta de ubicación. Plaza Isabela Developers solicitó oportuna reconsideración, la cual fue denegada mediante resolución de 13 de enero de 2000, notificada el 8 de febrero de 2000.

Inconforme, Plaza Isabela Developers presentó el recurso de epígrafe. En síntesis, sostiene que incidió la Junta de Planificación al reconocerle capacidad jurídica a la proponente y al aprobar la consulta sin que Discovery Properties cumpliera con los requisitos para la concesión de una variación. Arguye que las determinaciones de hechos de la Junta no están basadas en el expediente y que su análisis ambiental es deficiente y contrario a la Ley Sobre Política Pública Ambiental. Señala, además, la recurrente, que incidió la Junta al realizar una inspección ocular del predio objeto de consulta sin que se hubiese citado a las partes.

El 7 de abril de 2000, la Junta compareció ante nos para informar que Discovery Properties había solicitado el archivo de la consulta y que el recurso instado por Plaza Isabela era académico, por lo que procedía su desestimación.

Plaza Isabela Developers se opuso y mediante Resolución de 26 de abril de 2000, denegamos la solicitud de desestimación de la Junta.

El 5 de mayo de 2000, la Junta solicitó reconsideración y se expresó sobre los errores señalados por la recurrente en su recurso.

Evaluados los escritos de las partes y la documentación que se acompaña, a la luz del derecho aplicable, resolvemos.

## II

Previo a iniciar la discusión sobre los errores señalados por Plaza Isabela Developers, reafirmamos nuestra renuencia a desestimar el recurso por académico y declaramos No Ha Lugar la Solicitud de Reconsideración presentada por la Junta de Planificación.

La aparente solicitud de archivo de la consulta fue alegadamente presentada por Discovery Properties, luego de la Junta emitir la Resolución recurrida y aproximadamente un mes después de presentado el recurso de revisión ante este Tribunal. En dicha comunicación, Discovery Properties solicita el archivo de la consulta sin perjuicio, con el fin de que el proponente cumpla con el requisito de capacidad jurídica (standing).

Llama nuestra atención el que sea la Junta y no Discovery Properties quien solicita a este Tribunal la desestimación del recurso de revisión. La Junta carece de Juridicción para archivar la consulta objeto del recurso de revisión presentado ante este tribunal. Una vez adjudicada la consulta a favor de Discovery Properties y presentado recurso ante nos, la Junta no tiene autoridad para actuar.

La controversia tampoco es académica. Un caso es académico cuando surgen hechos que provocan que el caso pierda su carácter adversativo y que convierten el dictamen judicial que se dicte en una opinión consultiva. *Partido Popular Democrático v. Rosselló*, 95 J.T.S. 25. No obstante, el carácter recurrente o repetitivo del asunto planteado opera como excepción a la academicidad. *Asociación de Periodistas v. González*, 127 D.P. R.704, 721 (1991). Como bien señala Plaza Isabela Developers, si algo tiene la solicitud de archivo sin perjuicio de Discovery Properties es la garantía de que no será permanente, estableciendo de esta forma el carácter recurrente del asunto planteado.

Examinemos los errores señalados por Plaza Isabela Developers en su recurso.

## III

La Ley Orgánica de la Junta de Planificación, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 22 *et seq.*, autoriza a la Junta a hacer determinaciones sobre los usos de terrenos dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico. Art. 11 inciso (14) de la Ley Núm. 76, *supra.*

El Reglamento de Procedimientos Adjudicativos de la Junta regula el procedimiento de consulta de

ubicación. Mediante una consulta de ubicación, la Junta de Planificación evalúa, pasa juicio y toma la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren. La consulta será pública o privada, dependiendo de quién la origine, o incluye proyectos de desarrollos extensos a considerarse bajo las disposiciones de las Secciones 95.00, 96.00 y 97.00 del Reglamento de Planificación Núm. 4. Véase Sección 2.01 del Reglamento de Zonificación y la Sección 2.00 inciso 6 del Reglamento de Procedimientos Adjudicativos ante la Junta.

El Reglamento de Procedimientos Adjudicativos de la Junta establece como requisito de radicación de una consulta de ubicación, la capacidad jurídica del proponente. Sección 3.01 del Reglamento de Procedimientos Adjudicativos de la Junta. Tendrá capacidad jurídica para radicar una consulta de ubicación, el dueño del terreno o su representante. A estos efectos, la Sección 3.01 del Reglamento de Procedimientos Adjudicativos de la Junta dispone, en lo pertinente:

*"3.01 Capacidad Jurídica (Standing) -Las consultas, enmiendas, prórrogas y reaperturas, podrán ser sometidas por el proponente de los terrenos o su representante autorizado, en casos de proyectos privados; y por el jefe de la agencia, o su representante autorizado, en casos de proyectos públicos. La evidencia de propiedad lo será, tanto en proyectos privados como en proyectos públicos, la escritura correspondiente; debiendo someterse, además, en los proyectos privados, copia de la declaratoria de herederos y autorización de todos los herederos, cuando se trate de un bien hereditario, o de todos los dueños, cuando los terrenos pertenezcan a más de una persona."*

En el caso que nos ocupa, el proponente no es el dueño del terreno objeto de consulta, por lo que no se presentó un contrato de opción de compra y varias escrituras públicas que acreditan al Sr. Agustín Alfaro Jr., como dueño del terreno. El contrato de opción de compra presentado ante la Junta se realizó entre el proponente y personas jurídicas distintas al dueño del predio. Aunque los documentos sometidos sugieren que los contratantes son herederos del titular del terreno, la condición de herederos universales no fue acreditada de forma alguna. El proponente no es el dueño del terreno y no presentó copia de la declaratoria de herederos donde se acredite que los contratantes tienen un derecho hereditario sobre el bien en cuestión. Discovery Properties no demostró estar debidamente autorizado para solicitar la consulta, por lo que, conforme al Reglamento para Procedimientos Adjudicativos ante la Junta, el proponente carecía de capacidad jurídica para radicarla.

## IV

El predio objeto de la consulta de ubicación cuya revisión se nos solicita, ubica en un Distrito Residencial Cero (R-0). El Distrito Residencial Cero (R-0), establece, entre otros fines, para facilitar el control de la expansión o crecimiento urbano, proteger la utilidad de las vías arteriales, preservar terrenos de alta productividad agrícola, proteger áreas que requieran la preservación de su flora o fauna por su importancia económica, ecológica o científica. Sección 10.00 del Reglamento de Zonificación, Reglamento de Planificación Núm. 4.

Discovery Properties propuso el desarrollo de un proyecto comercial de 148,000 pies cuadrados, en un Distrito Residencial Cero (R-0).

En los Distritos Residenciales Cero (R-0), los terrenos o edificios se podrán utilizar para los siguientes fines:

*"1. Usos agrícolas, incluyendo puestos para la venta al detal de los productos cosechados.*

*2. Casas de una o dos familias.*

*3. Otros usos de acuerdo con lo establecido en la Sección 99.00 de este Reglamento.*" Sección 10.2 del Reglamento de Zonificación.

La Sección 99.00 del Reglamento de Zonificación dispone que la Junta considerará vía excepción, consultas de ubicación en determinados distritos y para ciertos usos específicamente indicados. El propósito de las excepciones es *"identificar para conocimiento general, aquellos usos compatibles con el carácter esencial del distrito que en forma discrecional podrían autorizarse sin detrimento al propósito del distrito."* Sección 99.02 del Reglamento de Zonificación.

El inciso 18 de la Sección 99.05 del Reglamento de Zonificación permite que se consideren usos comerciales, institucionales y de servicios en Distritos R-0; sin embargo, prescribe que será en terrenos hasta un máximo de una (1) cuerda.

Por otro lado, la Sección 97.01 del Reglamento de Zonificación autoriza a la Junta de Planificación a considerar proyectos de desarrollos extensos, independientemente del distrito donde se propongan, siempre que se cumplan con los requisitos reglamentarios.

La Sección 2 del Reglamento de Zonificación define desarrollo extenso como *"el desarrollo de facilidades comerciales, industriales, institucionales o recreativas que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados."*

El proyecto objeto de consulta comprende el desarrollo comercial de 148,000 pies cuadrados que se traduce en 15.95 cuerdas comprendidas en un Distrito Residencial Cero (R-0).

El uso comercial que pretende dársele al proyecto propuesto, ubicará en un Distrito Residencial Cero (R-0) y en un predio que excede de una cuerda, contrario a lo dispuesto en la Sección 99.05 inciso (18) del Reglamento de Zonificación.

Al considerar un desarrollo comercial extenso, la Junta de Planificación deberá evaluar si el proyecto propuesto está conforme al Plan de Usos de Terrenos y si el proyecto provee la infraestructura necesaria para atender necesidades del proyecto propuesto y para mitigar efectos directos o indirectos. Véase Sección 97.03, Reglamento de Zonificación. La Junta concluyó, en su resolución, que el proyecto propuesto cumple con el Plan de Usos de Terrenos. Para ello, realizó una inspección ocular del predio objeto de consulta sin citar a las partes interesadas y consignó en resolución lo siguiente:

*"en visita realizada a la finca objeto de consulta, se pudo constatar que el área tiene una fuerte tendencia al desarrollo comercial y residencial...".* Véase página 9 de la Resolución de la Junta.

La consulta de ubicación es un procedimiento adjudicativo. *"Un organismo administrativo tiene derecho a investigar por su cuenta hechos que considere pertinentes para la resolución de un caso. No tiene que depender exclusivamente de la prueba testifical y documental que las partes interesadas deseen presentar en la vista. Y uno de los medios de obtener tal información es la inspección ocular. Sin embargo, es imprescindible: (1) notificar a las partes interesadas para que éstas puedan acudir a la inspección ocular, si así lo desean; y (2) consignar en el récord de la vista pública todos los hechos constatados mediante la inspección ocular."* López v. Junta, 80 D.P.R. 646, 672 (1958). *"Para que la revisión judicial pueda limitarse a las cuestiones de derecho, es indispensable que la Junta de Planificación forme un récord completo de los procedimientos llevados a cabo ante ella en vistas casi-judiciales. Este récord debe contener toda la prueba documental y toda la evidencia oral admitida. Allí también deben constar todos los hechos que se hayan constatado mediante una inspección ocular."* Id., a la pág. 673.

En el caso ante nos, la Junta realizó una inspección ocular sin citar a las partes y no consignó para récord

los resultados de dicha Inspección. Conforme a los principios esbozados en *López v. Junta, supra,* la agencia recurrida incidió al adjudicar el caso a base de una inspección ocular, celebrada sin la comparecencia de las partes y cuyos resultados no forman parte del expediente administrativo. De este modo, la agencia incumplió con el principio de exclusividad del récord administrativo. Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2151 (d).

## V

El Plan de Usos de Terrenos de Puerto Rico, Reglamento Núm. 5414 de la Junta de Planificación, establece entre sus metas generales que la Junta dirija el proceso de planificación del pueblo hacia un desarrollo integral sostenible. Para ello, el Plan establece la política pública a seguir. En el área de desarrollo agrícola, la política pública consiste en retener, fomentar y proteger los terrenos con alto potencial agrícola, destinándolos a esos fines. En particular, la política pública va dirigida a retener en uso a los terrenos aptos para la producción de cosechas y productos animales, protegiéndolos de las prácticas y actividades que merman innecesariamente el potencial de desarrollo de la agricultura. Véase Plan de Usos de Terrenos de Puerto Rico, Metas y Objetivos de Desarrollo Agrícola, 7.00, 7.01 y 9.00.

El proyecto objeto de consulta, ubica en una finca de alto potencial agrícola que es utilizada como vaquería.

Al evaluar una consulta de ubicación, la Junta tomará el consideración, entre otros criterios, *"la localización específica del proyecto, los usos existentes en el sector.... rasgos topográficos, condición de inundabilidad, condición del subsuelo, densidad poblacional, grado de contaminación del ambiente, distancia entre los terrenos y las áreas construidas, importancia agrícola, ambiental o turística de los terrenos...".* Véase Sección 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta.

En el procedimiento de consulta, *"[l]a Junta de Planificación consultará, cuando lo considere necesario, a cualesquiera de los organismos gubernamentales, ...que de alguna manera tengan relación con los proyectos bajo estudio."* Sec. 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta, Reglamento Núm. 5244.

En la consulta objeto de este recurso, la Junta consultó al Departamento de Agricultura, quien emitió los siguientes comentarios sobre el proyecto propuesto:

*"En visita a la finca objeto de consulta, se pudo constatar que en la misma existe una vaquería con ganado en pastoreo, la cual recibe incentivos del Departamento de Agricultura. Su periferia está constituida por terrenos en pastos nativos productivos, la carretera principal y tres (3) viviendas. Su amplia cabida, su uso actual, su topografía llana y su tipo de suelo destacan el excelente potencial agropecuario de la finca. En adición, la periferia de la finca exhibe una baja densidad poblacional, lo cual estimula el establecimiento de proyectos agrícolas en el área. Consideramos que la aprobación de una propuesta de tal magnitud afectaría adversa e irreversiblemente el desarrollo agrícola del área, ya que crearía un precedente para futuros desarrollos urbanos en el área y estimularía el desplazamiento de proyectos agrícolas. Recomendamos que la finca sea preservada única y exclusivamente para la agricultura. Tomando en consideración lo antes expuesto, este Departamento objeta el proyecto propuesto y recomienda a la Hon. Junta de Planificación no autorizar esta consulta a base de las políticas públicas sobre usos de terreno aprobadas el 1 de marzo de 1995."* Véase Comunicación de 12 de noviembre de 1990, emitida por el Departamento de Agricultura.

La Junta hizo caso omiso de los comentarios del Departamento de Agricultura. Sin base alguna en el expediente, concluyó que el proyecto propuesto cumple con el Plan de Usos de Terrenos de Puerto Rico.

Si bien la Junta de Planificación tiene discreción para consultar, cuando estime necesario, a las agencias con peritaje en las áreas relacionadas con la planificación urbana, una vez ejerce esa discreción no puede arbitrariamente descartar las opiniones de dichos organismos especializados, sustituyéndolas por su propio criterio.

La Junta de Planificación tomará su determinación sobre las consultas considerando la totalidad del expediente y emitirá resolución incluyendo determinaciones de hecho y conclusiones de derecho que fundamenten el acuerdo tomado. Sección 9.00 del Reglamento para Procedimientos Adjudicativos de la Junta.

El procedimiento de consulta de ubicación es de naturaleza adjudicativa. *Luán Investment Corp. v. Román*, 125 D.P.R. 533, 547 (1990). La revisión judicial de una resolución administrativa de naturaleza adjudicativa debe hacerse mediante un examen de todo el expediente administrativo, de modo que el tribunal pueda determinar si las determinaciones de hecho de la agencia están sostenidas por evidencia sustancial. Secs. 3.14 y 3.15 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. secs. 2175 y 2164.

La intervención judicial se justifica cuando las determinaciones de las agencias no están sostenidas por prueba sustancial ante la totalidad del expediente administrativo.

La Junta tampoco consideró el Informe de la Oficial Examinadora designada.

Si bien la Junta no viene obligada por las determinaciones de hecho de sus examinadores, cuando dichas determinaciones están sostenidas por la prueba presentada, constituye un abuso de discreción descartarlas sin que exista otra prueba en el récord que avale la decisión de la agencia. Aunque el oficial examinador carece de autoridad para tomar una decisión final en el caso, ello no significa que sus conclusiones no merezcan la consideración del tribunal revisor, toda vez que las mismas forman parte del récord administrativo. *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 1941 208 (1987).

## VI

Por lo antes expuesto, se revoca la resolución recurrida.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General